(No. 32804.

CORYDON C. BRADLEY, Appellant, *vs.* CHARLES P. CASEY, Director of Public Works and Buildings, *et al.,* Appellees.

*Opinion filed September 24, 1953.*

Hoffman & Hoffman, of Springfield, for appellant.

Latham Castle, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellees.

Mr. Justice Maxwell delivered the opinion of the court:

This is an appeal from the circuit court of Sangamon County involving the Prevailing Wage Act of this State. Appellant filed his petition seeking to enjoin the Director of Public Works and Buildings, the Chief Highway Engineer, the Director of Finance, the Auditor and the Treasurer of the State of Illinois, and also Sangamon County, its superintendent of highways, county clerk, and treasurer, from making contracts and disbursing funds under said act. Appellant's petition for leave to file his injunction suit was granted upon a hearing wherein the trial court found reasonable grounds existed for filing the suit. Appellant, hereinafter referred to as petitioner, based his right to sue upon the facts that he is a citizen and taxpayer of this State, having paid all realty taxes assessed against real estate he owns, all license taxes under the Motor Vehicle Act, and all taxes for gasoline purchased under the Motor Fuel Tax Act. The complaint, in substance, attacked the constitutionality of the Prevailing Wage Act.

Appellees, hereinafter referred to as defendants, filed a motion to dismiss on the ground that the act in all respects is constitutional and valid. The trial court thereupon dismissed the complaint for want of equity.

Petitioner now urges in this court that the provisions of the act which purport to pertain to direct employment of employees in public works by public bodies is invalid for the reason that it is not embraced within the title of the act and, therefore, within the prohibition of section 13 of article IV of the constitution of Illinois. It is further contended the act is vague, indefinite and uncertain in its terms so as to amount to a delegation of legislative power in violation of due process; that the 1951 amendment defining wages under a collective bargaining agreement as the prevailing rate of wages is invalid in delegating a discretionary power to private parties and in being too restrictive and discriminatory, defining that to be a fact which is not a fact; that fi edom of contract between employers and employees is de .ied in violation of the Federal and State constitutions; that it is arbitrary and unreasonable in requiring employment of workmen on a per diem basis; that it produces waste and illegal expenditure of public funds.

The act in question was approved by the Governor of this State, June 26, 1941, and is entitled "An Act regulating wages of laborers, mechanics and other workmen employed under contracts for public works." (Ill. Rev. Stat. 1951, chap. 48, pars, 39s-1 to 39s-12, incl.) Sections 2, 4, 5, 6, 8, and 9 were amended in the year 1951. The act as amended is now here subjected to the constitutional attack of petitioner.

The declaration of policy of the State is set out in section 1 of the act, wherein it is declared that a wage of not less than the general prevailing rate per diem for work of a similar character in the locality in which the work is performed shall be paid to all laborers, workmen and mechanics employed by or on behalf of the State or by

or on behalf of the county, city and county, city, town, township, district, or other political subdivision of the State engaged in public works, exclusive of maintenance work. Section 2 of the act defines "public works," "maintenance work," "locality in which the work is performed," "general prevailing rate of per diem wages," "general prevailing rate of wages," and "prevailing rate of wages." This section also provides that when there is in effect a collective bargaining agreement negotiated by employer and employee covering the rates of wages for work of a similar character in a locality in which the work is to be performed, then such rates of wages shall be considered as the prevailing rate of wages in such locality. This latter provision concerning the collective bargaining agreement was added by amendment in 1951.

Section 3 provides that no less than the prevailing rate of per diem wages shall be paid to employees employed by or on behalf of the State or the other public bodies enumerated. Maintenance work is excluded from the section. This section further provides that only employees *directly employed* by contractors or subcontractors shall be deemed to be employed upon public works.

Section 4 makes provision for the ascertaining by the public body awarding the public works contract of the general prevailing rate of per diem wages in the locality where the work is to be performed for each craft or type of workman or mechanic needed to execute the contract or project. Said rates must then be included in the resolution or ordinance and the call for bids, and the section makes it mandatory upon the successful contractor and any subcontractor under him to pay no less than said specified rate. The public works contract must contain a stipulation of like effect.

Section 5 requires the keeping of records by the contractor and subcontractors and the public body for carrying out the purpose of the act.

Section 6 makes a violation of the act a misdemeanor and directs the Department of Labor to inquire diligently as to any violation.

Section 7 makes the finding as to prevailing wages final unless reviewed under the provisions of the act.

Section 8 provides that in the event the public body is unable to ascertain the prevailing rate of wage of any class of work required to be performed under its proposed contract, it shall be the duty of said body to state such fact in its resolution, ordinance or notice for bids, and in this event the clause specifying the prevailing wage as to such class of work may be excluded from the contract unless such wage may be determined by the court on appeal as provided for in the act.

Section 9 requires the public body to investigate and ascertain the prevailing rate of wages from time to time and to publicly post its determination. A certified copy is sent to the Secretary of State and within thirty days thereafter is published in a newspaper of general circulation in the area concerned, notifying all persons of its determination; other notices to employers, employees and other associations are provided. A time for filing objections and having a hearing is provided. Also included is a method of review under the provisions of the Administrative Review Act. An appeal thereafter to this court may then be had and these proceedings are given priority in the trial court over all other civil proceedings except election contests. The Attorney General is required to represent the public body and defend its determinations.

Section 10 contains provisions for general subpoena powers.

Section 11 permits recovery by employees of any difference between the stipulated rates and the actual wages received.

Section 12 is the usual section providing for the keeping intact of the remaining portions of the act in the event

any portion thereof is declared unconstitutional. The foregoing is intended merely to furnish a brief sketch of the act without going into the detailed provisions word for word.

The first prevailing wage act enacted in 1931 was declared unconstitutional the same year in *Mayhew* v. *Nelson,* 346 Ill. 381. In 1939, a second prevailing wage act was passed and it was declared unconstitutional in 1940 in *Reid* v. *Smith,* 375 Ill. 147. From the latter opinion two judges dissented. Thereafter, the 1941 act was passed in the following year. As previously stated certain amendments were added in 1951. It therefore appears that the present act, containing many changes from the former ones, is a serious declaration of the public policy by the elected representatives of the people of this State, with an evident attempt to cure the law of its former alleged evils.

The objection in respect to certain provisions embraced in the act but which are not expressed in the title was not treated in either of the aforesaid opinions. We have carefully studied the act and we believe it is a fair conclusion to state that, when the entire context of the act is considered, it appears manifest that the legislature intended the act to apply only to contractors under contracts for public works. Apparently due to human error in drafting certain provisions of the act, improper terms have been employed to the extent that the impression is reasonably given that the act applies also to direct employment by the State and other public bodies. For example, section 1 of the act refers to persons employed *by* or on behalf of the State, or *by* or on behalf of the county, city and county, city, town, township, district or other political subdivision of the State, engaged in public works. Section 3 also refers to persons employed *by* or on behalf of the State, or *by* or on behalf of the county, etc., although the last sentence of this section provides that only those employees directly employed by contractors or subcontractors shall be deemed to

be employed upon public works. Without commenting on various other provisions of the act which would clearly indicate the legislative intention to extend the act only to public work contracts with contractors, we are of the opinion that the title of the act refers only to those persons covered by the act and employed under *contracts for public works.*

The language of the title is clear and unmistakable and it does not embrace persons directly employed by the State or other public bodies. To declare otherwise would do violence to accepted concepts of ordinary language. We, therefore, hold that such provisions of the act which heretofore might have been construed as requiring payment by public bodies of prevailing per diem wages in direct employment of workmen in construction of public works are invalid as being within the prohibition of section 13 of article IV of our State constitution which provides, *inter alia,* that if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void as to so much thereof as shall not be so expressed.

The objection that the act is vague, indefinite and uncertain, resulting in a delegation of legislative power in violation of due process is reasserted in this case. It is contended that no adequate standard or guide is established for ascertaining what the prevailing rate of wages for the various crafts might be in a given locality. Defendants contend that the public bodies merely ascertain the facts in respect to a prevailing rate of wages. It must be conceded that the word "prevailing" *ipso facto* connotes the existence of a condition. However, we declared in the *Mayhew case,* at page 388 "Whether it means the rate which the most skillful, the average, the least capable or the most numerous group command, the act does not disclose. Even if these varying factors could be brought into harmony, there is no assurance that agreement upon a rate of wages for work of a certain nature as prevail-

ing in a particular community would result." Later, in the *Reid case,* we stated that the term "prevailing rate per diem wages" neither defines the term nor furnishes a standard for asserting a wage. Petitioner also contends that giving the court the right to determine, under section 8 of the act, the prevailing rate of wage on an appeal from the determination of a public body, when such rate is not ascertainable, is an unlawful delegation of the legislative power to the courts. This proposition again turns on the point as to whether there is a *finding, ascertaining* and *determining* of a condition that already exists with sufficient notoriety as to be generally known in a certain community, or whether it is a grant of power to *declare* or *fix,* or *create* the condition in the first instance. There is much force to the assertion in the dissenting opinion in the *Reid case* that "Common experience verifies the existence of a prevailing wage rate in each community for each craft or type of workmen. An engineer, construction contractor or a public official charged with the duty of letting public contracts can readily determine the general prevailing rate of *per diem* wages in each locality. In the making of private contracts or in the letting of public contracts, the prevailing rate of wage for each craft or type of workman or mechanic forms the basis of every estimate of the cost of such construction work." We feel that a further refinement of the term "prevailing" would serve no useful purpose. Webster's definition as "generally current," or "most frequent" will suffice.

In 1927, Justice Cardozo declared "This is not the time to attempt a definition of 'the prevailing rate of wages' with its background of legislative history and twenty years or more of practical construction. One finds it hard to believe that a cliché so inveterate is devoid of meaning altogether. Learned judges have said (*e.g.,* Haight, J., in *People ex rel. Rodgers* v. *Coler, supra,* at p. 42) [52 L.R.A. 814, 82 Am. St. Rep. 605, 59 N.E. 730] that it is

synonymous with market rate. This might not exclude altogether the possibility of fluctuations and diversities at a given day and place. There can be little doubt that it would furnish us with criteria of conduct adequate for civil, if not criminal, liability. (*Sloan* v. *Baird,* 162 N.Y. 327, 330; *Muser* v. *Magone,* 155 U.S. 240, 249; Wigmore, Evidence, § 719; cf. *Nash* v. *United States,* 229 U.S. 373, 377.) Other judges have believed that the range of variation is wider and less certain than any that is consistent with the standards of a market value. Even so, a customary minimum might co-exist with a customary maximum, however, varying the number of intermediate gradations. A standard so indefinite, if effective for nothing else, would prevent the fall of wages below the customary minimum. A level would be established below which the rate could not descend and still be characterized as 'prevailing.' The Legislature may have thought that the statutory promise would not be wholly without value if it availed for this and nothing more. There would be no merciless exploitation of the indigent or idle." *Campbell* v. *New York City,* 244 N.Y. 317, 155 N.E. 628.

Upon re-examination of the *Mayhew* and *Reid cases* and cases from other jurisdictions holding to the contrary, we are now of the opinion that it is within the power of the General Assembly of this State to enact into law (if within constitutional bounds) that those persons employed under public works contracts paid for from public funds shall receive no less than the prevailing rate of per diem wages paid in the particular locality to various crafts and types of works. The legislature has the power to pass any law not expressly prohibited by the constitution, and it possesses every power not delegated to some other department or to the Federal government and not denied to it by the Federal or State constitution. *Gillespie* v. *Barrett,* 368 Ill. 612.

We believe, however, that there is merit in petitioner's contention that the 1951 amendment to section 2, defining wages under a collective bargaining agreement as the prevailing rate of wages in a given locality, is invalid for the reason that it delegates a discretionary power to private parties and that it tends to be too restrictive and discriminatory in defining that to be fact which is not a fact. Upon close analysis it can be seen that this amendment permits the *fixing* of the standard rather than *finding* or *ascertaining* an existing fact. This amendment then, being vulnerable to the foregoing criticism, is clearly unconstitutional.

We might in passing here point out that the New York constitutional amendment referred to in the majority opinion of the *Reid case* is not a sound ground for drawing a distinction, for, as pointed out in the *Campbell case* by Justice Cardozo, this amendment was enacted to overcome the objection that there existed some immunity supposed to be inherent in the municipality itself.

That there is here involved the liberty of contract within the constitutional concept we cannot agree. The United States Supreme Court held in *Atkin* v. *Kansas,* 191 U.S. 207, "It cannot be deemed a part of the liberty of any contractor that he be allowed to do public work in any mode he may choose to adopt without regard to the wishes of the state." See, also, *People ex rel. Cossey* v. *Grout,* 179 N.Y. 417, 72 N.E. 464. In the case of *Long Island Railroad Co.* v. *Department of Labor,* 256 N.Y. 498, 177 N.E. 17, the New York Court of Appeals, in upholding a statute with similar provisions in reference to prevailing wages stated, "But for the provisions of the statute, the company would be free to determine for itself whether it should adopt the policy of employing the cheapest labor it can obtain in the cheapest market or the policy of paying at least as much as the average workman would receive in the locality where the work is to be done. The

railroad company might even be willing to assume the risk that the employment of poorly paid laborers would cause unrest and consequent delays and interruptions in work performed for the public benefit upon public highways. To that extent the labor law may increase the cost of the work and the burden of the railroad company; but it seems to us that such an increased burden cannot be regarded as unreasonable when balanced against the advantage to the state of having the work performed under conditions which give some assurance that the work will be completed without interruptions or delay by workmen of average skill. To secure that advantage for the state, the legislature had the power to impose the increased burden upon the railroad company."

Common experience over many years clearly reveals that two or more contractors employing the same materials and work personnel for which they pay the same basic wages will still submit bids for the same job at varying levels. This is attributed to the variations and differences in management efficiency, modes of procedure, margins of profit, etc. The public bodies will still therefore be the beneficiaries of competitive bidding. Nothing contained herein, however, is to be construed as meaning that a taxpayer of this State cannot enjoin the improper disbursement of public funds when such conduct is in violation of law.

For the reasons assigned, the decree of the circuit court of Sangamon County is reversed and the cause remanded, with directions to find and hold the last paragraph of section 2 of the present act, being the 1951 amendment to said section, invalid, and to further find and hold that any provisions of the act which purport to require public bodies to pay prevailing per diem wages to employees directly employed by such public bodies are invalid. The decree in all other respects is affirmed.

*Affirmed in part, and reversed in part, and remanded.*