**CITY OF JOPLIN, Missouri, et al.,
Appellants,**

v.

**INDUSTRIAL COMMISSION OF MIS-
SOURI et al., Respondents.**

No. 47342.

Supreme Court of Missouri,

En Banc.

Dec. 14, 1959.

Loyd E. Roberts, Joplin, for City of Joplin.

John M. Dalton, Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., for Industrial Commission.

Daniel J. Leary, Joplin, for United Brotherhood of Carpenters and Joiners of America, and others.

HYDE, Presiding Judge.

This is a proceeding under Secs. 290.250 and 290.260 (statutory references to RSMo and V.A.M.S.) to have the Department of Labor and Industrial Relations ascertain the prevailing hourly rate of wages in Jasper County for each craft or type of workman needed to execute contracts for the construction of relief sewers, mains and submains in the City of Joplin. After a hearing before the Industrial Commission through which the Department acted and a hearing on a petition for review in the Circuit Court, all parties have appealed from that court's judgment setting aside the Commission's findings and remanding the cause for further consideration.

The wage determination was first made upon the written request of a Joplin firm of consulting engineers. Objections were filed by the City of Joplin and eleven contractors in which the constitutionality of the Prevailing Wage Act (Secs. 290.210–290.310; Laws 1957, p. 574) was challenged on several grounds and in which it was charged that the wage determination was made on an erroneous basis. At the hearing on these objections, the commission took the position that it had no authority to pass on constitutional questions and proceeded to hear the evidence on the issue of prevailing wages. The commission made a final wage determination and a petition for review was filed by the objectors, raising the same constitutional questions and also the correctness of the wage determination. Five labor unions and several individuals were permitted to intervene. The court declined to pass on the constitutional ques-

tions but found that the commission used an erroneous standard in making its wage determination, set aside its wage determination and remanded the cause to the commission for a rehearing and new findings. The city and the contractors, hereinafter referred to as objectors, appealed to obtain determination of the constitutional questions. The intervenors, hereinafter referred to as proponents, appealed from the judgment setting aside the commission's findings as to wages.

■ Administrative agencies do not have authority to determine constitutionality of legislation (Davis, Administrative Law Treatise, Sec. 20.04) and there is some conflict in the cases concerning necessity of exhaustion of administrative remedies as being essential to raising such questions. (See Davis, Sec. 28.09.) However, objectors not only did so but also raised the constitutional questions in the first pleadings filed and renewed them at every subsequent stage. They claim the Act does not apply to constitutional charter cities for reasons hereinafter stated and also claim that it is a special law resting on an arbitrary classification in violation of the due process clause of our constitution (Sec. 10, Art. I) V.A.M.S. and of the 14th Amendment to the United States Constitution; that it is an unconstitutional delegation of legislative powers without sufficient standards; and that it is a local or special law in violation of Sec. 40, Art. III. As to the due process claim, objectors say the exemption of drainage and levee districts from the Act is without any reasonable basis, arbitrary and does not bear a proper relation to the matters dealt with by the legislation.

■ Sec. 290.220 (Sec. 2 of the Act) provides: "It is hereby declared to be the policy of the state of Missouri that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed, shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of main-tenance work." However, in the definition section (Sec. 290.210(7), Sec. 1 of the Act) it is stated: " 'Public works' means all fixed works constructed for public use except work done directly by any public utility company pursuant to order of the public service commission or other public authority whether or not done under public supervision or direction or paid for wholly or in part out of public funds; it does not include any work done for or by any drainage or levee district."

Proponents say that the city has no standing to raise this constitutional question because such constitutional restraints do not apply against the state in favor of its own municipality, citing Williams v. Mayor and City Council of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015; Risty v. Chicago, Rock Island & Pacific Ry. Co., 270 U.S. 378, 46 S.Ct. 236, 70 L.Ed. 641; Shelby v. City of Pensacola, 112 Fla. 584, 151 So. 53; State ex rel. Spink v. Kemp, 365 Mo. 368, 283 S.W.2d 502, 519. However, since individual contractors are also parties, we will rule this contention.

Objectors say that in view of the declaration of policy in Sec. 290.220 applicable to all public bodies and all public works, the exclusion of work done for drainage and levee districts is without any rational basis and is purely arbitrary. They cite State v. Taylor, 351 Mo. 725, 173 S.W.2d 902; McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815; City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1; State v. Miksicek, 225 Mo. 561, 125 S.W. 507; Crowly v. Thornbrough, 226 Ark. 768, 294 S.W.2d 62; Walters v. City of St. Louis, Mo., 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660; which hold that classification must rest on real differences, having some relevance to the purpose for which classification is made and not be wholly arbitrary. Objectors rely most strongly on State v. Taylor, supra, holding invalid as without any reasonable classification, a statute fixing maximum hours for female employees. The statute by its terms applied anywhere

in the state, in cities and in the country, but exempted cities and towns of less than 3,000 population. We said [351 Mo. 725, 173 S.W.2d 905]: "[T]here certainly can be no logical reason for granting the total exemption to a small segment of our society embraced within cities and towns of 3,000 population or less, and making the statute universally applicable both above and below." If this statute had exempted rural unincorporated areas also, a reasonable basis for such classification might have been found. We do not think we can say that the exclusion of drainage and levee district work has no reasonable basis. In the first place, the usual purpose of such districts (as shown by the applicable statutes; see Chapters 242–246, and our decisions construing them) is to protect agricultural lands and agriculture often has been recognized as a reasonable basis for exemption from other laws; for example, our workmen's compensation laws (see Sec. 287.090(2)) and our unemployment compensation laws (see Sec. 288.034 (6)(a)). Furthermore, our statutes relating to such districts constitute a complete code unto itself, granting and withholding power and authority according to its provisions. (In re Mississippi & Fox River Drainage District, 270 Mo. 157, 192 S.W. 727; State ex rel. Walker v. Locust Creek Drainage District, 228 Mo.App. 434, 67 S.W.2d 840, 847; Dalton v. Fabius River Drainage District, 238 Mo.App. 655, 184 S.W.2d 776, 784.) Our conclusion is that the completely separate treatment of this kind of public corporation throughout its legislative history, together with its different purposes from those of other public bodies and its close relation to agriculture, considering the fact that such work is paid for, by the owners of farms and lands protected, wholly on the basis of the benefit to their lands, does afford a reasonable basis for separate classification and treatment.

■ As to objectors' contention of unconstitutional delegation of legislative power, without standards for determining the prevailing wage rate, this has been considered in several cases, involving similar prevailing wage laws, which have held that sufficient standards have been stated. State v. Anklam, 43 Ariz. 362, 31 P.2d 888; Metropolitan Water District of Southern California v. Whitsett, 215 Cal. 400, 10 P.2d 751; Bradley v. Casey, 415 Ill. 576, 114 N.E.2d 681; Baughn v. Gorrell & Riley, 311 Ky. 537, 224 S.W.2d 436; Ruark v. International Union of Operating Engineers, 157 Md. 576, 146 A. 797; Roland Electrical Co. v. Mayor and City Council of Baltimore, 210 Md. 396, 124 A.2d 783; Campbell v. City of New York, 244 N.Y. 317, 155 N.E. 628, 50 A.L.R. 1473. Our Act contains the following provisions:

Sec. 290.230, subd. 1. "Not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed, and not less than the prevailing hourly rate of wages for legal holiday and overtime work, shall be paid to all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work. *Only such workmen as are directly employed by contractors or subcontractors in actual construction work on the site of the building or construction job shall be deemed to be employed upon public works.*"

Sec. 290.210. "(3) 'Prevailing hourly rate of wages' means the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar character. (4) 'Locality' means the county where the physical work upon public works is performed, except that if there is not available in the county a sufficient number of competent skilled laborers, workmen and mechanics to construct the public works efficiently and properly, 'locality' may include two or more counties adjacent to the one in which the work or construction is to be performed and from which such workers may be obtained in sufficient numbers to perform the work * * *."

Sec. 290.250. "Before any public body awards a contract for public works, it shall notify the department to ascertain the prevailing hourly rate of wages in the locality in which the work is to be performed, for each craft or type of workman needed to execute the contract or project."

Sec. 290.260, subd. 1. "The department, from time to time, shall investigate and determine the prevailing hourly rate of wages in the localities. Determinations shall be made annually on or about July 1 of each year and shall remain in effect until superseded by a new determination. In determining prevailing rates, the department shall ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and such rates as are paid generally within the locality."

▆ Therefore wages must be determined by the Industrial Commission before a contract is let and it is given standards (which for reasons given in the above-cited cases we think are sufficient) by which to make such determination. Thus we do not have a case, like Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, cited by objectors, holding invalid for uncertainty an Oklahoma statute under which a contractor had to determine himself the current rate of per diem wages in the locality where the work was to be performed and pay such amount or be guilty of a crime. See annotation, 50 A.L.R. 1493. As long ago as 1927, Justice Cardozo, in Campbell v. City of New York, 155 N.E. loc. cit. 631, 50 A.L.R. loc. cit. 1479 said "the prevailing rate of wages" had a "background of legislative history and 20 years or more of practical construction" ; that "it is synonymous with market rate" ; and that "there can be little doubt that it would furnish us with criteria of conduct adequate for civil, if not for criminal, liability."

In Metropolitan Water District of Southern California v. Whitsett, supra, 10 P.2d loc. cit. 753, 754, 757 the Supreme Court of California held standards adequate, requiring the public body awarding the contract to "ascertain the general prevailing rate of per diem wages in the locality in which the work is to be performed, for each craft or type of workman or mechanic needed." However, the rate determined by such public body was made final and conclusive and the court said "when this final decision is made, no uncertainty would arise" and that "when it has done so, that which may have been subject to variation has become definite by action of constituted authority." The court further said: "The contention that the phrase 'work of a similar character' is too vague to permit definition would seem to be without substantial merit. The character of the work to be performed on the proposed road or on any of the construction work to be done by the district in carrying out the object of its creation would not appear to be so extraordinary as not to permit a ready classification of the employees by resort to means of common knowledge and experience in this state. The law was intended for the benefit of the great body of laborers and mechanics to be employed on the job. There would seem to be no difficulty in classifying such employees as blacksmiths, bricklayers, carpenters, concrete mixer operators, crane operators, hod carriers, iron workers—structural, reinforcing, and ornamental—laborers, lathers, marble workers, mechanics, painters, pile driver men, plasterers, powder men, traction operators, truck drivers, teamsters, etc. The mention of the foregoing does not, of course, exclude others, but the classification would necessarily include those workers who, by common experience, are numerous enough that a prevailing wage may be applied to them."

In Bradley v. Casey, supra, 114 N.E.2d loc. cit. 684–685 the Supreme Court of Illinois held standards, less specific than those in our Act, to be sufficient and overruled previous cases holding to the contrary. In the Illinois Act also it was the duty of the public body having the work done to investigate and ascertain the prevailing rate of wages. Under our Act, this determination

is made by an independent administrative tribunal, in accordance with the standards stated in the sections hereinabove set out, upon evidence produced by the public body and other interested parties at a hearing held under the provisions and safeguards of our Administrative Procedure Act, Chapter 536. Its decision makes the rates certain, and we must conclude that our Act does provide sufficient standards and proper procedure for this purpose. Therefore we hold that it does not make an unconstitutional delegation of legislative power.

■ On their contention that the Act is a special law, objectors cite Sec. 40, Art. III, Constitution as follows: "The general assembly shall not pass any local or special law: * * * (27) regulating labor, trade, mining or manufacturing; (28) granting to any corporation, association or individual any special or exclusive right, privilege or immunity, * * * ; (30) where a general law can be made applicable, * *."

■ Objectors say: "Proponents of the constitutionality of the law are faced with a two-pronged dilemma: (1) If the law is construed to apply to regular employees of a city, or to work which it does on its own account, it would appear to be in violation of Article VI, Sec. 22, prohibiting the Legislature from creating or fixing the duties or compensation of municipal employment; and (2) If the law is construed not to apply to regular salaried employees of the City, or to work done by it on its own account, then it would appear that the Act is a special law granting special and exclusive privileges to employees of contractors engaged in building public works inasmuch as they would receive special and different treatment than city employees doing the same work." The portion of Sec. 290.230, subd. 1 hereinabove quoted and italicized appears to be directly in conflict with other language of that section and of Sec. 290.220; but it would seem from the entire context of the Act, emphasizing contracts for public works and duties of contractors, that the positive language of this italicized portion expresses the true intent of the legislature and should control its application. It is also a familiar rule of construction that when one construction of a statute will make it unconstitutional and another construction will make it constitutional, the latter will be made if it is reasonable. State ex inf. McKittrick v. American Colony Ins. Co., 336 Mo. 406, 80 S.W.2d 876, 883, and cases cited. To construe the Act as applicable to direct employees of public bodies would make it unconstitutional as to all cities adopting their own charters under the provisions of Sec. 19, Art. VI, of the Constitution because Sec. 22 of Art. VI provides: "No law shall be enacted creating or fixing * * * compensation of any municipal office or employment, for any city framing or adopting its own charter * * *." Furthermore, the legislative history of the Act indicates an intent to limit its application to employees of contractors constructing public works on contracts with public bodies. This seems clear from a consideration of the language originally used in House Bill 294 that was left out of the House Committee Substitute for House Bill 294, which was the measure enacted by the 1957 General Assembly. We, therefore, hold that the Act does not apply to employees of public bodies. However, we further hold that this does not make the Act a special law prohibited by the provisions of Sec. 40, Art. III, invoked. This is true because it is reasonable to classify public and private employment differently. This is done in our workmen's compensation law, Secs. 287.030, subd. 2 and 287.090, subd. 1, and in our unemployment compensation law, Sec. 288.034(6) (e), and in many other situations. As stated in Norwalk Teachers' Ass'n v. Board of Education, 138 Conn. 269, 83 A.2d 482, 485, 31 A.L.R.2d 1133, cited by proponents, public employees "occupy a status entirely different from those who carry on a private enterprise." See also King v. Priest, 357 Mo. 68, 206 S.W.2d 547, 557; State ex inf. McKittrick ex rel. Ham v. Kirby,

**693**

349 Mo. 988, 163 S.W.2d 990, 995. As noted in the latter case, there is no inherent right to public office or employment; and this authorizes reasonable rules, regulations and classifications.

■ Objectors also contend that the Act does not apply to it or to any constitutional charter city. They say this is true for the following reasons: (1) that it would be in conflict with the authorized provision of the Joplin charter requiring contracts for public works to be let "to the lowest and best bidder therefor," citing Hillig v. City of St. Louis, 337 Mo. 291, 85 S.W.2d 91; (2) that to require the city to stipulate in its contracts for public works the crafts or types of workmen and the rates of pay is fixing duties and compensation of employees in violation of Sec. 22, Art. VI, by indirection, even if the Act only applies to work done by contract; and (3) that building the proposed public works is an exercise of the proprietary functions of the city and not its governmental functions so that the requirements of the Act would be an invasion of the city's prerogatives under its charter adopted by constitutional authority, citing State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S.W.2d 532; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195, and other cases distinguishing between proprietary and governmental functions.

The charter provision considered in the Hillig case was that contracts should be let "to the lowest responsible bidder" (85 S.W.2d loc. cit. 92); and there it was a city ordinance and not a state law that was held to be void because in violation of the charter provision. (For decisions contrary to Hillig see Spahn v. Stewart, 268 Ky. 97, 103 S.W.2d 651, 660, and cases cited; see also McQuillin, Municipal Corporations, Secs. 29.45, 29.46.) Here we have a state law which can control over a charter provision if it establishes a policy of general statewide concern because Sec. 19, Art. IV, provides that city charters

authorized thereby must be "consistent with and subject to the constitution and laws of the state." Thus it is not necessary to consider the correctness of the Hillig case (claimed to be impaired by Arkansas-Missouri Power Corp. v. City of Kennett, 348 Mo. 1108, 156 S.W.2d 913) because objectors' reasons 1 and 3 hereinabove stated must be decided on the same basis, namely: Does the Act establish a policy of general statewide concern? Or is the payment of wages on public works a matter of only local interest? (On these questions see McQuillin, Municipal Corporations, Secs. 4.83–4.85.)

■ Objectors argue this is a matter of only local interest because they say the building of sewers is a proprietary function, citing 18 McQuillin, Municipal Corporations 490, Sec. 53.125; and because they say the letting of contracts for construction of public works is likewise a private local function. However, even as to contract requirements, we have applied to constitutional charter cities our statute (Sec. 432.070) requiring all contracts to be in writing and subscribed by the parties. Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 881, 179 S.W.2d 108; Mullins v. Kansas City, 268 Mo. 444, 188 S.W. 193. "The real test, it seems, is not whether the state or the municipality has an interest in the matter, since usually both have, but instead whether the state's interest or that of the municipality is paramount." (McQuillin, Municipal Corporations, Sec. 4.87.) Here more than letting city contracts or building local sewers is involved. It is the matter of wages paid to workmen employed by contractors throughout the state on public works of any public body (not cities only) that is involved. As to that matter, Sec. 290.220 says it is "declared to be the policy of the state of Missouri that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is to be performed, shall be paid" to such workmen. Sec. 290.230 states the duty to pay such

wages in accordance with this policy and Secs. 290.240–290.260 make it the duty of a state agency to determine such wages and enforce this policy. All this indicates more than mere local interest. The same claim of local interest was raised in State v. Jaastad, 43 Ariz. 458, 32 P.2d 799, 801, in which the court, considering a similar matter, said: "[S]ince the principle of a minimum wage law is obviously one of general and public concern and not merely a local interest, chapter 12 applies to the self-governing cities of the state." We think this is also true of our prevailing wage law and hold that it does apply to contractors constructing public works for constitutional charter cities.

■■■■ Objectors claim that requiring the city to stipulate in its contracts for public works rates of pay, in accordance with the Act, would be in violation of Sec. 22, Art. VI, is without merit. They say the legislature is accomplishing by indirection something it cannot directly do. However, all that Sec. 22 prohibits is "creating or fixing the powers, duties or compensation of any municipal office or employment" for such cities. Employment by private contractors is not municipal employment and as we have held only such private employment on public works is affected by the Act.

■■■■ At the hearing before the Commission on the objections to its original wage determination, there was much testimony concerning wages paid to cement finishers, carpenters, machine operators, skilled and semiskilled and common laborers and other workmen. This testimony came from contractors, officers of contracting companies, from workmen and representatives and members of unions. Collective bargaining agreements, showing wages fixed for various workmen and crafts, were offered and received in evidence. However, this evidence was almost entirely concerning wages paid in what was known as heavy, highway, commercial and industrial building construction. The wage rates determined by the commission were the rates paid in this heavy construction work. Proponents' position is that sewer work is in the field of heavy construction and that was the view taken by the Commission. This is based mainly on testimony to the effect that the same skills used in highway and building construction, by carpenters, cement finishers and certain machine operators, could be used in some phases of sewer work; and that some drains are built in connection with highway and building construction. However, objectors had much evidence to show that on sewer work a different type of workman was generally used; that such workmen operate different types of equipment, lay tile, drive trucks and do other work; that there was thus much less craft specialization than in highway and building construction; and that the wage rates were lower than in highway and building construction. Objectors' evidence showed that three contractors have done from 85% to 90% of all sewer construction in recent years in Joplin, under competitive bidding contracts; that they all have the same method of operation and use of labor; and that they employ their workmen on a more permanent basis than heavy construction contractors who move from job to job in different localities and usually employ most workmen temporarily only at such times and places as they need them. Sewer construction foremen operate the heavier equipment and some are on a monthly salary. There was evidence of similar rates of pay, type of work done, and type of workmen (described as general utility workmen) used, by other contractors who built concrete work on driveways, sidewalks, curbs and gutters and laying water lines; and also as to employees of road districts in Jasper County.

It seems apparent from its rulings on admissibility of evidence that the commission had determined that the wage rates and craft classification of highway and building construction should be applied to the Joplin sewer project, before objectors'

evidence was heard, as it had found in its original determination. Furthermore, early in the hearing of objectors' evidence, the chairman said to their attorney: "You know you are losing your case * * * there has been 30 contractors come in here and testified they are paying the wages that are in this determination." The trial court found that "the wage rates determined by the commission are not in fact the prevailing rates of pay for similar work existing in the City of Joplin or Jasper County"; and that "the only work shown to be similar to the work involved in the projects for which a determination is requested is the work of laying sewers, mains and sub-mains (which is identical or like work) and the work of laying water mains and extensions which is similar but not identical." The court further found: "[T]he Commission failed to give due consideration to the statutory requirement that rates as are paid generally within the locality should also be considered. The taking of testimony before the Commission was all taken in light of the Commission's announcement that the rates of pay in the so-called heavy construction industry were to govern, and the Commission apparently paid little heed to any testimony except such testimony as conformed to the Commission's standard both as to wages paid and the type workmen used. Because the Commission used an erroneous standard new findings of fact should be made."

We think the court's judgment setting aside the wage determination and remanding the case to the commission for further consideration was proper. In a somewhat similar situation, in State ex rel. Missouri Water Co. v. Public Service Commission, Mo.Sup., 308 S.W.2d 704, 720, we held it was improper to make a determination of rate of return, to which a utility was entitled, without giving any consideration to evidence relating to present "fair value" of the company property. Our view

as therein stated was that a proper determination must be based upon all relevant factors and that, because of its failure to do so, the order of the commission was "neither authorized by law nor supported by competent substantial evidence upon the whole record." Our view is that the evidence herein, showing that craft classifications and wage rates in sewer construction were different from those of heavy construction, should have been considered.

■ It is argued in the briefs of the commission and proponents that it was required to pay the prevailing rate of wages generally paid in the locality to workmen engaged in work of a *similar* character; and that the court's ruling in effect substituted the words "same" or "identical" for the word "similar." While "similar" has a broader meaning, we cannot construe the Act to mean that the same or identical work is not to be considered in determining the wages and type of workmen to be used on such a project. Certainly it is neither to be excluded nor made the only standard to be considered. Likewise, any work in heavy construction that could reasonably be found to be similar should also be considered. The Act makes it clear that all relevant factors are to be considered in determining the prevailing wage applicable to any contract or project; for example, Sec. 290.260, subd. 1 provides that in determining prevailing rates the commission shall "consider the applicable wage rates established by collective bargaining agreements, if any" and also "such rates as are paid generally within the locality." It makes neither conclusive. Our conclusion is that the trial court could properly find that the commission failed to consider all applicable factors. However, we do not agree with the trial court's direction that upon remand the commission should make its new determination on the basis of 1957 wage rates. The clear intent of the Act is that current prevailing wage rates be determined as

indicated by the provision of Sec. 290.260, subd. 1 for annual determinations.

The judgment remanding to the commission for further proceedings is affirmed.

All concur.