(No. 37911.—

THE CITY OF MONMOUTH *et al.,* Appellees, *vs.* FRANCIS S. LORENZ, Director of Public Works and Buildings, *et al.,* Appellants.

*Opinion filed Nov. 26, 1963.—Rehearing denied Jan. 20, 1964.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, EDWARD A. BERMAN, and LEE D. MARTIN, Assistant Attorneys General, of counsel,) for appellants.

G. DURBIN RANNEY, DAVID J. SHANKS, R. P. LAMOREAUX, WILLIAM M. BARDENS, and THEODORE L. STANSELL, all of Monmouth, and HUGH J. GRAHAM, of Springfield, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The city of Monmouth and 63 other plaintiffs, including cities, counties, individuals, a public official and a taxpayer, sought a declaratory judgment that an act, commonly referred to as the Prevailing Wage Law, (Ill. Rev. Stat. 1961, chap. 48, pars. 39s—1 to 39s—12,) has been rendered unconstitutional by amendments adopted since 1951. The defendants Directors of the Department of Public Works and Buildings and the Department of Finance filed a motion to dismiss the complaint, which was denied, and they elected to stand on their motion. Whereupon, a decree was entered finding the Prevailing Wage Law unconstitutional and enjoining its enforcement. This appeal followed.

The act in question was adopted in 1941. Its general purpose is to compel municipalities and other legal entities to ascertain and pay prevailing wages on public projects. Following certain amendments in 1951, it was the subject of constitutional attack in *Bradley* v. *Casey*, 415 Ill. 576. The act was construed as applicable only to public works to be constructed under contract, not to direct employment by public bodies, and was held to be constitutional except as to a provision not germane to the issue here.

The plaintiff municipalities all employ personnel for the construction and repair of public works, some of which are governmental and some proprietary. The city of Monmouth is presently engaged in the building and maintenance of a city hospital. The complaint alleges that plaintiffs employ some persons who do both construction and maintenance work and that by reason of steady employment and other benefits plaintiffs are able to hire workmen and mechanics at rates of pay which are 33% to 50% less than purported prevailing rates of pay for each craft or type of workman performing labor on a particular construction job.

The question posed is whether the Prevailing Wage Law, as amended, which now brings within its provisions employees of public bodies engaged in public construction, is constitutional. While the act contained some language indicating the existence of such a question at the time of *Bradley* v. *Casey*, 415 Ill. 576, it was there held that "(w)hen the entire context of the act is considered, it appears manifest that the legislature intended the act to apply only to contractors under contracts for public works." (p. 581.) That case also held that the title of the act did not embrace persons directly employed by public bodies.

The act was amended in 1957 and again in 1961. The title now includes public works both by municipalities and their contractors, and section 2 (par. 39s—2) in unmistakable terms extends application of the act to employees

of public bodies when engaged in new construction but excludes those engaged in maintenance work.

Many grounds of unconstitutionality are asserted by plaintiffs, several of which center around section 10a of the act, (Ill. Rev. Stat. 1961, chap. 48, par. 39s—10a,) added in 1961, which reads: "The State of Illinois, through its appropriate agencies shall not approve any public works project for which such approval is required, until the public body requesting such approval has filed a certificate of full compliance with this Act, and no motor fuel tax funds shall be allocated to any public body until such certificate of compliance with this Act is filed."

It is first contended that section 10a amends section 8 of the Motor Fuel Tax Act, (Ill. Rev. Stat. 1961, chap. 120, par. 424,) and certain sections of the Illinois Highway Code, by dealing with the same subject matter, without being complete in itself and without setting forth the section amended, and is therefore within the prohibition of section 13 of article IV of the constitution. That section provides, in part that "no law shall be revised or amended by reference to its title only, but the law revived. or the section amended, shall be inserted at length in the new act."

The situation created by the legislation points up the foresightedness of the framers of the constitution in including such a provision. It is conceded by all the parties that many problems will be found in administering the laws under the act in its present form. Section 10a is not complete in itself. The difficulty in its application may be illustrated by a study of it in connection with section 8 of the Motor Fuel Tax Act. Section 8 apportions fixed percentages of motor fuel tax collections (after deduction of administrative expense and other items) to the Department of Public Works and Buildings and to the several municipalities and counties of the State, the latter in turn to allocate a fixed percentage to each of their townships. Thus, section 8 was complete and, by applying its formulae,

100% of the funds collected could be definitely allocated. On the other hand, section 10a prohibits allocation of funds to any public body which has failed to file its certificate of compliance with the Prevailing Wage Law but fails to provide for allocation where no certificate is filed. It is readily apparent that allocation provisions are intermingled in the two acts and officials charged with administering the law must look to both acts; and, even when they do so, uncertainty as to allocation remains. This is violative of section 13 of article IV of the consituation. (See *Chicago Motor Club* v. *Kinney,* 329 Ill. 120; *Illinois Liquor Control Com.* v. *Chicago's Last Liquor Store,* 403 Ill. 578; *Hertz Corp.* v. *Taylor,* 15 Ill.2d 552.) As this court noted in the *Illinois Liquor Control Com.* case at page 583: "If there were no Liquor Control Act, or a Fair Trade Act, the law under consideration in this case would be unintelligible. It lacks the requirement of certainty, and of being definite." The present uncertainty is even more manifest with respect to apportionment to townships through counties where townships in a county certify compliance but the county fails to do so.

Section 10a goes deeper than providing for the withholding of *payment.* It prohibits *allocation* under certain circumstances in direct contradiction of section 8 of the other act, thereby leaving uncertainty as to allocation between public bodies. This is quite different from withholding payment of funds as provided by the Illinois Highway Code, (Ill. Rev. Stat. 1961, chap. 121, par. 5—702,) or withholding compensation of State employees as in the amendment to the State Finance Act discussed in *Pickus* v. *Board of Education,* 9 Ill.2d 599. In the former the funds allotted would be withheld until compliance with the condition for payment, and in the latter the appropriation would lapse at the end of the biennium. In neither case would it pose a problem of uncertainty to those charged with administering the funds.

Defendants argue that if the Prevailing Wage Law and Motor Fuel Tax Act are read *in pari materia,* as was done in *Jordan* v. *Metropolitan Sanitary District,* 15 Ill.2d 369, that the legislative intent will be apparent. This overlooks the cumulative effect of amendments to the Prevailing Wage Law which plaintiffs charge not only makes for uncertainty, but offends the due process and equal protection provision of the Illinois constitution. Section 3 of the act (Ill. Rev. Stat. 1961, chap. 48, par. 39s—3) provides for the ascertainment of the prevailing wage rate for each craft or type of workman and payment of such rates to those engaged in construction of public works but excluding from the benefits of the act those engaged in maintenance work. The term "maintenance work" is defined in section 2 (par. 39s—2) as "the repair of existing facilities when the size, type or extent of such existing facilities is not thereby changed or increased." Under certain sections of the Illinois Highway Code, (Ill. Rev. Stat. 1961, chap. 121, pars. 5—701 to 5—701.8, 6—701 to 6—701.5 and 7—202 to 7—202.15,) public bodies may use motor fuel tax funds for both new construction and maintenance and by section 5—702 the Department is enjoined to compel maintenance by withholding payment. On the other hand section 10a of the Prevailing Wage Law requires certification of compliance on all public works projects and prohibits allocation until a certificate is filed. The impracticability of application of added section 10a by public officials is apparent, and it is unconstitutional and void.

This leaves for consideration the effect of other amendments to the Prevailing Wage Law. As heretofore pointed out, the title of the act now includes public works by public bodies as well as contractors, and section 2 extends application of the act to public bodies engaged in construction. By so doing the legislature in effect made a single classification of all employers of laborers, workmen and

mechanics engaged in the construction of public works whether the employer be a contractor or a public body.

It is well established that equal protection of the law is not violated as long as the selection of objects for inclusion and exclusion within the class, upon which the legislation acts, rests upon a rational basis. (*Donoho* v. *O'Connell's Inc.* 18 Ill.2d 432; *People* v. *Warren,* 11 Ill.2d 420; *Smith* v. *Murphy,* 384 Ill. 34; *Price* v. *City of Elgin,* 257 Ill. 63.) Here the legislation has put into a single class public bodies and construction contractors which are for most purposes two entirely different classes. It is true that each class may employ laborers, workmen and mechanics for the construction of public works and that the legislation in question deals only with this common characteristic of the two classes. Labels may be deceptive, however, and labeling the two classes as employers of workmen for the construction of public works does not cover the vital and real differences between the two classes of employers and their respective employment relationships with their employees. Government employment is generally of a steady nature and entails fringe benefits, whereas employment by a private contractor is unusally seasonal and does not carry like fringe benefits. These disadvantages of seasonal employment and lack of fringe benefits are compensated, of course, by the payment of higher wages. The workmen employed by the public body may do as well as or better in the long run than the workman employed by a private contractor although his *rate* of pay be not as high. The object of the legislation in question is to insure that workmen on public projects receive the same economic benefits as workmen on projects of a similar nature by regulating the rate of pay they are to receive, but rate of pay is just one factor in determining the economic benefits to be derived from employment, and where, as here, the two classes of employers are by their very nature in such a position that they cannot and do not confer similar

economic benefits on their employees exclusive of the rate of pay, an act requiring both classes to pay their employees on construction at the same rate violates the equal protection clause of both the fourteenth amendment to the Federal constitution and section 22 of article IV of the Illinois constitution.

This holding does not render the Prevailing Wage Law unconstitutional *in toto*. It was held to be valid, as it existed prior to the 1957 and 1961 amendments, in *Bradley* v. *Casey,* 415 Ill. 576. Deletion of the amendments will leave it substantially as originally enacted by which it was made applicable to public bodies when engaged in construction of public works by contract.

The decree of the circuit court of Warren County is affirmed.

*Decree affirmed.*