HERBERT HAYEN *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF OGLE, Defendant-Appellant (Aurand Construction *et al.*, Intervenors-Appellants).

Second District   No. 82—313

Opinion filed July 6, 1983.

HOPF, J., dissenting.

Dennis Schumacher, State's Attorney, of Oregon, for appellant County of Ogle.

Gerard C. Smetana, of Arvey, Hodes, Costello & Burman, of Chicago, for other appellants.

Joseph W. Phebus and Janet A. Flaccus, both of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal challenges the constitutionality of "An Act regulating wages of \*\*\* workers employed in any public works \*\*\*" (Prevailing Wage Act) insofar as it is construed to define "general prevailing rate of wages" as wages paid to employees working on public works only. Ill. Rev. Stat. 1981, ch. 48, par. 39s—1 *et seq.*

The county board of Ogle County passed a resolution ascertaining the prevailing wages to be paid on public works projects in the county by first inquiring into wage rates paid on both public and private construction projects for similar trades. Using this information, the county board passed a resolution which averaged the rate set for each of the construction crafts to arrive at the prevailing wage for each craft. The plaintiffs, who are representative of certain trade unions in the county, objected to this method, claiming that the statute limits the inquiry to wages paid on public works projects. They further claim error in the mathematical computation.

Following a hearing, the county board adhered to its resolution. Plaintiffs sought administrative review in the circuit court. Various parties doing business in Ogle County were permitted to intervene as of right. The circuit court, finding no issue of fact, reversed the county board's determination based on the law and directed the county to reascertain the prevailing rate of wages by limiting its inquiry to wages paid on public works. The county and intervenors appeal, contending that the statute, so construed, is unconstitutional as a violation of due process and equal protection standards.

We consider first the contention of the plaintiffs that the county lacks standing to challenge the constitutionality of the Prevailing

Wage Act because a municipal entity is not a "person" entitled to fifth and fourteenth amendment protections of due process and equal protection under the Federal Constitution and under similar provisions in the State Constitution. (See *Village of Riverwoods v. Department of Transportation* (1979), 77 Ill. 2d 130, 136; *Franciscan Hospital v. Town of Canoe Creek* (1979), 79 Ill. App. 3d 490, 496-97.) This argument was not advanced by petitioners in the trial court and they are therefore precluded from raising it on appeal. (*Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 11; *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) We will therefore consider the constitutional arguments without reviewing the issue of the standing of the county and the intervenors to raise them.

The statute provides, as pertinent:

"Sec. 1. It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works, exclusive of maintenance work." Ill. Rev. Stat. 1981, ch. 48, par. 39s—1.

"Sec. 2. This Act applies to the wages of laborers, mechanics and other workers employed in any public works, as hereinafter defined, by any public body and to anyone under contracts for public works.

As used in this Act, unless the context indicates otherwise:

'Public works' means all fixed works constructed for public use by any public body, other than work done directly by any public utility company, whether or not done under public supervision or direction, or paid for wholly or in part out of public funds.

\* \* \*

The terms 'general prevailing rate of hourly wages,' 'general prevailing rate of wages' or 'prevailing rate of wages' when used in this Act mean the hourly cash wages plus fringe benefits for health and welfare, insurance, vacations and pensions paid generally, in the locality in which the work is being performed, to employees engaged in work of a similar character on public works." Ill. Rev. Stat. 1981, ch. 48, par. 39s—2.

"Sec. 3. Not less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed, and not less than the general prevailing rate of hourly wages for legal·holiday and

overtime work, shall be paid to all laborers, workers and mechanics employed by or on behalf of any public body engaged in the construction of public works, exclusive or maintenance work. ***" Ill. Rev. Stat. 1981, ch. 48, par. 39s—3.

"Sec. 4. The public body awarding any contract for public work or otherwise undertaking any public works, shall ascertain the general prevailing rate of hourly wages in the locality in which the work is to be performed, for each craft or type of worker or mechanic needed to execute the contract ***." (Ill. Rev. Stat. 1981, ch. 48, par. 39—4.)

The county and the intervenors contend that the act as construed by the circuit court unconstitutionally deprives the taxpayers of Ogle County of property by forcing them to pay, they claim, substantially higher wages to workers on public projects than is paid on private projects, without a rational relation to the purpose of the act. They also contend that the statutory construction substantially interferes with the right of contractors to contract with their employees and materially increases the costs of construction.

■ This court has previously decided that the phrase "on public works," which was added to section 2 of the act in 1961, has the effect of limiting the inquiry in ascertaining the prevailing wage rate to only those wages paid on public projects. (*Anderson v. County of Jo Daviess* (1980), 81 Ill. App. 3d 354, 358.) The appellants appear to be arguing that we should reassess our holding in *Anderson*, apparently for the reason that, they argue, *Anderson* does not deal with the declaration of policy found in section 1 of the act which was not changed following the amendment to section 2 in 1961. They argue that the purpose of the act since its enactment, as stated in section 1, has been to effectuate a policy that workers on public contracts receive not less than wages paid for similar work throughout the locality, not merely wages paid on public works. Thus, the statute as we have construed it can never achieve the legislative purpose of equalizing public and private wages and therefore does not bear a rational relation to the legislative purpose.

We find these arguments unpersuasive for several reasons. First, the policy declaration is essentially neutral. Section 1 does not state that it is State policy to equalize public works and private construction wages. Rather, it declares the policy to be "that a wage of no less than the general *prevailing hourly rate* *** in the locality *** shall be paid" to all laborers on public works projects. (Emphasis added.) The underlined phrase is defined in section 2 as wages and benefits paid generally in the relevant locality to "employees engaged

in work of a similar character on public works." There is thus inherent harmony rather than conflict between sections 1 and 2. We recognized in *Anderson* that the legislature intended the act as amended to provide for the equalization of wages paid for similar jobs within only the public works sector. *Anderson v. County of Jo Daviess* (1980), 81 Ill. App. 3d 354, 358.

Further, "a declaration of policy, like a preamble, 'is no part of the Act.' " (*Brown v. Kirk* (1976), 64 Ill. 2d 144, 152.) The provision of the act as amended unambiguously indicates that only public works wages are to be equalized. It is an improper mode of construction of statutes to create ambiguity by reference to a policy section of the statute. (*Brown v. Kirk* (1976), 64 Ill. 2d 144, 152-53.) The real issue is whether the statute serves any legitimate State objective. A law does not violate due process as long as it bears a rational relation to a proper legislative purpose and is neither arbitrary nor discriminatory. (*Kidd v. Industrial Com.* (1981), 85 Ill. 2d 534, 538; *Thornton v. Mono Manufacturing Co.* (1981), 99 Ill. App. 3d 722, 725. See also *Williamson v. Lee Optical* (1955), 348 U.S. 483, 488, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464.) The court applying the rational basis test is not charged with isolating the legislature's actual "purpose" in passing a statute and then determining whether the statutory means are rationally related to the actual goal of the legislature. Rather, it is settled that there is a "rational basis" if the legislature could have concluded that the law is reasonably related to *any* legitimate State objective. The court is not restricted to examining the rational connection between the statute and the goal that the legislature had in mind when it passed the law; if there is a plausible reason for the legislative action it is " 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision.' " (*United States R.R. Retirement Board v. Fritz* (1980), 449 U.S. 166, 179, 66 L. Ed. 2d 368, 378, 101 S. Ct. 453, 461.) Thus the test is whether there exists a rational relation between the statute and "*a*" proper legislative purpose. (*Kidd v. Industrial Com.* (1981), 85 Ill. 2d 534, 538; *United States R.R. Retirement Board v. Fritz* (1980), 449 U.S. 166, 175-78, 66 L. Ed. 2d 368, 376-78, 101 S. Ct. 453, 459-61; *Thornton v. Mono Manufacturing Co.* (1981), 99 Ill. App. 3d 722, 725.) This is consistent with the view that a law does not violate substantive due process if it is not arbitrary or discriminatory. *United States R.R. Retirement Board v. Fritz* (1980), 449 U.S. 166, 173 n.8, 66 L. Ed. 2d 368, 375 n.8, 101 S. Ct. 453, 458 n.8.

The same reasoning applies if the statute is subjected to a constitutional equal protection analysis. The argument that the act vi-

olates equal protection is essentially based on the assertion that it may require contractors to pay higher wages on public works projects than they might pay on private works projects. This difference is no ground for invalidating the statute and is adequately supported by the State's interests in controlling the conditions under which public works projects are performed, so as to "give some assurance that the work will be completed without *** delay by workmen of average skill." (*Bradley v. Casey* (1953), 415 Ill. 576, 586; *Atkin v. State of Kansas* (1903), 191 U.S. 207, 48 L. Ed. 148, 24 S. Ct. 124.) The act, which in essence sets a minimum wage for public works projects, is not arbitrary and thus violates neither due process nor equal protection.

■ We also find no merit in the other constitutional arguments raised by the county and intervenors. The act does not violate the privileges and immunities clause of the fourteenth amendment; the economic interests involved here are not within the rights of national citizenship protected by that clause. (*Murphy v. Mt. Carmel High School* (7th Cir. 1976), 543 F.2d 1189, 1192-93; *Slaughter-House Cases* (1873), 83 U.S. 36, 74-75, 21 L. Ed. 394, 408.) Finally, the argument that the statute unconstitutionally delegates the power to fix wages on public works projects to private parties was rejected by this court in *Anderson v. County of Jo Daviess* (1980), 81 Ill. App. 3d 354, and we see no reason to disturb our holding there.

■ A further question has been raised as to whether the county is required to take into consideration the number of hours worked at each rate before determining the prevailing general hourly rate. The act does not require the county to use any specific formula in calculating the generally prevailing wage. Rather, the county must simply ascertain the "generally current" or "most frequent" wage for each particular craft in public construction projects in the area. (*Bradley v. Casey* (1953), 415 Ill. 576, 583.) The county's determination will not be upset unless it is not supported by evidence. (See *Fox River Valley Carpenters v. Board of Education* (1978), 57 Ill. App. 3d 345, 347-48; *Union School District v. Commissioner of Labor* (1961), 103 N.H. 512, 517, 176 A.2d 332, 336.) In *Anderson*, this court approved use of questionnaires and the division of total pay by total hours worked within the trade. The focus, however, should be on what is "most frequent" or "generally current." (*Bradley v. Casey* (1953), 415 Ill. 576, 583.) We find no error in the method used by the county to ascertain the generally prevailing wage.

The judgment of the circuit court of Ogle County is affirmed.

Affirmed.

REINHARD, J., concurs.

JUSTICE HOPF, dissenting:

I respectfully dissent. I agree with the majority that a statute does not violate due process as long as it bears a rational relationship to a proper legislative purpose and is neither arbitrary nor discriminatory. However, I do not believe a legitimate purpose exists to the Prevailing Wage Act as amended; nor do I believe that the limiting phrase "on public works" bears a reasonable relationship to the actual and original policy behind the act.

The original Illinois Prevailing Wage Act was one of many prevailing wage acts throughout the country which was enacted during the Depression to combat the economic and social conditions of the times. (See Leader & Janero, *Implied Private Right of Action Under the Davis-Bacon Act: Closing Some Loopholes in Administrative Enforcement*, 29 DePaul L. Rev. 793 (1980) (hereinafter Leader); see also Annot., 18 A.L.R.3d 944 (1968).) During that period, widespread unemployment increased the competition among contractors for government employment at a time when the government was required to award its contracts to the lowest bidder. (See Leader, at 795; Ill. Rev. Stat. 1929, ch. 24, par. 129.) In order to capture this limited market, some contractors were employing migrant workers and paying them wages far below the rate paid locally. Local workmen and contractors were unable to compete with this migrant labor force. (Leader, at 795-96; see also Annot., 18 A.L.R.3d 944 (1968).) The prevailing wage acts were attempts by the various State and Federal legislatures to resurrect the depressed labor market by prohibiting wage differentials from becoming a major competitive advantage in bidding on government construction projects. (Leader, at 795-96; Annot., 18 A.L.R.3d 944 (1968).) Thus, the acts required taxpayers to pay increased wages to public works employees so that public wages would equal those paid generally in the community. In *Bradley v. Casey* (1953), 415 Ill. 576, 585-86, 114 N.E.2d 681, the court found that under the Illinois act the increased burden on the taxpayer and contractor was reasonable "when balanced against the advantage to the state of having the work performed under conditions which give some assurance that the work will be completed without interruptions or delay by workmen of average skill."

The legislature's redefinition in 1961 of "prevailing wages" so as to limit it to wages paid only to public works employees had the cor-

responding effect of incorporating by reference the new definition into the policy provision of the Act. (Ill. Rev. Stat. 1961, ch. 48, pars. 39s—1, 39s—2.) Thus, when the statute is construed as a whole (see *Jahn v. City of Woodstock* (1981), 99 Ill. App. 3d 206, 425 N.E.2d 490), the current policy of the Act as amended provides for the equalization of wages paid for similar jobs within only the public works sector itself. The result is a separate rate of pay for public workers which is unresponsive to the market generally and is allegedly 20% to 30% higher than the wages paid in the private sector. The reasoning to give some assurance that the work would be completed without delay by workmen of average skill may have been an appropriate justification when the Act was interpreted to bring public workers up to standards in the private industry. However, where the legislation as amended and applied provides for wages roughly 30% over private industry in the same locality, can we say that this result is necessary to assure that the work will be completed diligently by workers of average skill? In other words, there is a rationale in paying like wages in a given locality, but does the same reasoning apply so that public employees be paid over and above workers in a given locality? I think not. I am cognizant of the principle of statutory interpretation that a law does not violate due process as long a it bears a rational relation to a proper legislative purpose and is neither arbitrary nor discriminatory. (*Kidd v. Industrial Com.* (1981), 85 Ill. 2d 534, 538, 426 N.E.2d 822; *Thornton v. Mono Manufacturing Co.* (1981), 99 Ill. App. 3d 722, 425 N.E.2d 522.) However, I find no legitimate legislative purpose in creating a self-perpetuating financial arrangement.

I am mindful of the caveat that the courts should not substitute their judgment for that of the legislature. (*Kidd v. Industrial Com.* (1981), 85 Ill. 2d 534, 538, 426 N.E.2d 822; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 454, 389 N.E.2d 529.) However, just because the legislature has legislated does not mean that analysis must end. Otherwise no statute could ever be found to be arbitrary. (See *United States R.R. Retirement Board v. Fritz* (1980), 449 U.S. 166, 187, 66 L. Ed. 2d 368, 383, 101 S. Ct. 453, 465 (Brennan, J., dissenting).) I have difficulty determining what the purpose of the amendment to section 2 is, other than to lock in one class of worker to a higher wage scheme to the detriment of the taxpayer and those working in the private sector. Would it not be possible that a worker on a public project could receive many times what his counterpart in the private sector is receiving? If we say that the original intent of the act was to guarantee to the public the services of workers of average capability, this new amendment should guarantee the

cream of the crop.

I therefore conclude that the original purpose of the act remains intact and that the limiting phrase "on public works" bears an unreasonable relationship to that purpose. (Ill. Rev. Stat. 1981, ch. 48, pars. 39s—1, 39s—2; *cf. Anderson v. County of Jo Daviess* (1980), 81 Ill. App. 3d 354, 401 N.E.2d 265, where we found no unconstitutional delegation of authority in the phrase "on public works.") The purpose of equalizing wages in the public and private sectors of the economy can never be achieved if in ascertaining the general prevailing wage public bodies may only inquire into wages paid on public works projects. I would therefore hold that section 2 of the Prevailing Wage Act, insofar as it purports to limit such an inquiry to only public works wages and results in payment of wages up to 30% higher than those in the private sector, is unconstitutional as both a denial of due process and equal protection.