CHARLES A. GUSE, Plaintiff-Appellant, v. BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, Defendant-Appellee.

First District (2nd Division)   No. 1—89—0834

Opinion filed September 11, 1990.

Asher, Gittler & Greenfield, Ltd., of Chicago (Marvin Gittler and Stephen Feinberg, of counsel), for appellant.

Kirkland & Ellis, of Chicago (John E. Angle, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

The Board of Trustees (Board) of the Public School Teachers' Pension and Retirement Fund of Chicago (Pension Fund) revoked certain pension credits previously credited to plaintiff on the basis of the Board's erroneous interpretation of certain 1987 amendments to the Illinois Pension Code (Pension Code) (Ill. Rev. Stat. 1989, ch. 108½, par. 1—101 *et seq.*). Plaintiff sought review of the administrative decision in the circuit court, which granted his motion for summary judgment on the ground that the Board's determination was incorrect. Plaintiff then petitioned the circuit court for attorney fees pursuant to the provisions of section 14.1(b) of the Illinois Administrative Procedure Act (the Act) (Ill. Rev. Stat. 1989, ch. 127, par. 1014.1(b)). The court denied his petition, holding that the Board is not an "agency" as defined in section 3.01 of the Act (Ill. Rev. Stat. 1989, ch. 127, par. 1003.01). Plaintiff now appeals. We affirm.

The Board is a legislatively created entity responsible for administering and controlling the Pension Fund. (Ill. Rev. Stat. 1989, ch. 108½, par. 17—137.) It consists of 10 members: two members of the Chicago Board of Education; six contributors to the Pension Fund (*i.e.*, teachers); and two pensioners (*i.e.*, retired teachers). (Ill. Rev. Stat. 1989, ch. 108½, par. 17—137.) The Pension Fund is established and governed by the provisions of article 17 of the Pension Code, entitled "Public School Teachers' Pension and Retirement Fund—Cities of Over 500,000 Inhabitants" (Ill. Rev. Stat. 1989, ch. 108½, par. 17—101 *et seq.*). Effective only in cities of 500,000 or more inhabitants, as its title suggests, article 17 of the Pension Code provides pensions to eligible teachers and school administrators and death benefits to their eligible next of kin. (Ill. Rev. Stat. 1989, ch. 108½, pars. 17—101, 17—115 through 17—126.) All areas of Illinois outside the corporate limits of such cities are subject to the provisions of article 16 of the Pension Code, entitled "Teachers' Retirement System of the State of Illinois" (Ill. Rev. Stat. 1989, ch. 108½, par. 16—101 *et seq.*). As a practical matter, the Board operates only in the City of Chicago, whereas the Teachers' Retirement System of the State of Illinois cov-

ers personnel in all areas of the State outside the city limits of Chicago. See Ill. Rev. Stat. 1989, ch. 108½, pars. 16—102, 17—101.

Plaintiff was a Chicago public school teacher and a contributor to the Pension Fund until September 16, 1985, when he went on an authorized leave of absence to serve as an officer of the Chicago Federation of Musicians. On March 30, 1987, the Board advised plaintiff by letter that, due to a recent amendment to section 17—134 of the Illinois Pension Code (Pub. Act 84—1472, eff. Jan. 23, 1987 (amending Ill. Rev. Stat. 1985, ch. 108½, par. 17—134)), he could validate his leave of absence for receiving pension benefits if he contributed certain sums of money to the Pension Fund, which plaintiff accordingly did. On March 29, 1988, however, the Board advised him that it was considering the retroactivity of the amendment and that its decision could impact on his ability to validate his leave. Finally, in June 1988, the Board advised plaintiff's counsel that it had determined that section 17—134 is not retroactive and that therefore plaintiff could not receive any pension credit for his special leave of absence prior to January 1987. On June 21, 1988, the Board denied plaintiff's request for review of its determination.

Plaintiff then sought administrative review of the Board's decision in the circuit court pursuant to the provisions of the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*). The court granted plaintiff's motion for summary judgment, in effect reversing the Board's determination that amended section 17—134 of the Illinois Pension Code is not retroactive, and allowed plaintiff to file a petition for attorney fees pursuant to section 14.1(b) of the Administrative Procedure Act (Ill. Rev. Stat. 1989, ch. 127, par. 1014.1(b)). On December 30, 1988, plaintiff filed his fee petition with the circuit court, and after having reviewed the parties' memoranda and having heard counsel's arguments, on March 2, 1989, the court denied plaintiff's fee petition on the ground that the Board is not a State agency as defined in section 3.01 of the Administrative Procedure Act (Ill. Rev. Stat. 1989, ch. 127, par. 1003.01).

Plaintiff seeks attorney fees under section 14.1(b) of the Administrative Procedure Act, which provides as follows:

"(b) In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the *agency's* exceeding its statutory authority or the *agency's* failure to follow statutory procedures in the adoption of the rule, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 127, par. 1014.1(b).)

Section 3.01 of the Administrative Procedure Act defines "agency" in the following manner:

" 'Agency' means each officer, board, commission and agency created by the Constitution, whether in the executive, legislative, or judicial branch of State government, but other than the circuit court; each officer, department, board, commission, agency, institution, authority, university, body politic and corporate of the State; and each administrative unit or corporate outgrowth of the State government which is created by or pursuant to statute, other than units of local government and their officers, school districts and board of election commissioners; each administrative unit or corporate outgrowth of the above and as may be created by executive order of the Governor. However, 'agency' does not include:

(a) the House of Representatives and Senate, and their respective standing and service comittees;

(b) the Governor; and

(c) the justices and judges of the Supreme and Appellate Courts.

No entity shall be considered an 'agency' for the purposes of this Act unless authorized by law to make rules or to determine contested cases." Ill. Rev. Stat. 1989, ch. 127, par. 1003.01.

■ Therefore, unless the Board is a State agency as defined in section 3.01 of the Administrative Procedure Act, the provisions of the Act do not apply, and the circuit court may not award attorney fees to plaintiff pursuant to section 14.1(b). (Ill. Rev. Stat. 1989, ch. 127, pars. 1002, 1003.01, 1014.1(b); see *Bethune v. Larson* (1989), 188 Ill. App. 3d 163, 170, 544 N.E.2d 49, 53; *County of Macon v. Board of Education of Decatur School District No. 61* (1987), 165 Ill. App. 3d 1, 7, 518 N.E.2d 653, 658.) The statutory definition of "agency" is composed of four disjunctive parts: (1) entities created by the Illinois Constitution; (2) various other entities and bodies politic and corporate of the State; (3) legislatively created administrative units or corporate outgrowths of the State government, "other than units of local government and their officers, school districts and board of election commissioners"; and (4) administrative units or corporate outgrowths of the above. Ill. Rev. Stat. 1989, ch. 127, par. 1003.01.

It is clear that the Board is not a constitutionally created entity and thus does not satisfy the first part of the definition. But is it perhaps a body politic and corporate of the State? Plaintiff advances several arguments favoring State affiliation based on certain provisions in the Pension Code describing the nature of pension funds in gen-

eral.[1] Section 22—401 of the Pension Code, while stating that "[a]ny *** retirement fund *** created by the legislature of the State of Illinois *** is hereby declared *** to be a body politic and corporate under the title specified in the law creating such fund" (Ill. Rev. Stat. 1989, ch. 108½, par. 22—401), does not provide that a pension fund is a body politic and corporate *of the State.*

■ Several other Pension Code provisions lead to the conclusion that in establishing the Pension Fund, the Illinois General Assembly sought to create an entity independent of the State. For example, section 22—402 of the Pension Code declares that the Pension Fund is "created in the public interest and for the general welfare of the State, and pursuant to the governmental powers of the State" but also states that it is "separate and apart from the corporate purposes of the State." (Ill. Rev. Stat. 1989, ch. 108½, par. 22—402.) This "separateness" is further emphasized in section 22—403, which provides that any taxes levied for the benefit or purposes of any pension fund are "for governmental purposes *** and not for the corporate purposes *** of the State," and that "[a]ny pension payable *** shall not be construed to be a legal obligation or debt of the State, *** but shall be held to be solely an obligation of such pension fund." (Ill. Rev. Stat. 1989, ch. 108½, par. 22—403.) Further, section 22—404 provides that "[e]xpenditures made and expenses incurred in connection with the administration of any pension fund shall not be construed to be a debt imposed upon the State, [but] *** shall be held to be the obligation of such pension fund exclusively, as a body politic and corporate." Ill. Rev. Stat. 1989, ch. 108½, par. 22—404.

We would conclude from the foregoing observations alone that under the plain meaning of the statute the Board is not a body politic and corporate of the State, but rather a body politic and corporate separate and distinct from the State and therefore does not qualify as a State "agency" under the second part of the definition. However, plaintiff accurately observes that sections 22—401 through 22—404 of the Pension Code apply equally to *all* pension funds created by the Code, including, for example, the State Employees' Retirement System (SERS) (Ill. Rev. Stat. 1989, ch. 108½, par. 14—101 *et seq.*). Significantly, in *Escalona v. Board of Trustees, State Employees Retirement System* (1984), 127 Ill. App. 3d 357, 469 N.E.2d 297, the

---

[1]Although the Board is the named party in interest, and we have set out to determine whether the Board is an agency of the State, our analysis of the Board's classification necessarily includes a discussion of the Pension Fund, because references in the Pension Code to the Pension Fund implicitly include the Board as its administrative and controlling body.

appellate court applied the rulemaking provisions of section 4.02 of the Administrative Procedure Act to the actions of the SERS board of trustees. Thus, we must examine other indicia of State affiliation to determine whether the Board is an agency of the State.

With reference to *Escalona*, we note that the issue of the applicability of the Administrative Procedure Act to the SERS and its governing board was not litigated in that case. Moreover, certain dispositive differences exist between the SERS and the Pension Fund, leading to the conclusion that although the SERS board of trustees may be a State agency for the purposes of the Act, the defendant Board is not. The following comparisons make this clear.

The SERS is a comprehensive retirement system for employees of the State of Illinois. (See Ill. Rev. Stat. 1989, ch. 108½, pars. 14—101, 14—102, 14—103.05.) The State must provide sufficient contributions "to meet the cost of maintaining and administering the system on a funded basis in accordance with actuarial reserve requirements." (Ill. Rev. Stat. 1989, ch. 108½, par. 14—131.) Moreover, the payment of contributions by each individual department of the State, as well as all allowances, annuities, benefits and administration expenses, are the obligations of the State.

In contrast, any deficiency in the Pension Fund must be removed by the Chicago Board of Education from the annual Pension Fund tax and/or its educational fund, and not by the State. Ill. Rev. Stat. 1989, ch. 108½, par. 17—129.

The SERS board consists of seven trustees: the State Comptroller; the Director of the State Bureau of the Budget; a non-State employee appointed by the Governor; two SERS members appointed by the Governor; one member elected from the contributing membership; and one annuitant elected by the annuitants of the system. Ill. Rev. Stat. 1989, ch. 108½, par. 14—134.

Significantly, the 10 members of the Pension Fund's board are neither appointed by the Governor nor employed by the State. (See Ill. Rev. Stat. 1989, ch. 108½, pars. 17—137 through 17—140.) In fact, as noted earlier, the Board consists of two members of the Chicago Board of Education, six contributors to the Pension Fund and two pensioners. (Ill. Rev. Stat. 1989, ch. 108½, par. 17—137.) The Chicago Board of Education appoints two of its members to serve on the Board; and the contributors and pensioners separately elect their respective representatives from their own ranks. Ill. Rev. Stat. 1989, ch. 108½, pars. 17—138, 17—139.

Finally, the official title of the SERS bears the designation "State," whereas the official title of the Pension Fund, the "Public

School Teachers' Pension and Retirement Fund of Chicago," does not reflect any affiliation with the State. (See Ill. Rev. Stat. 1989, ch. 108½, par. 17—101.) Thus, the Pension Fund's official title, its fiscal obligations and the composition of its board evidence an orientation that partakes of both the local education and private sectors.

■ Two opinions of the Illinois Attorney General address the definition of "agency" under the Administrative Procedure Act, and although not binding on this court, such opinions are persuasive authority. (*Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 527 N.E.2d 1264; *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310.) Defendant cites opinion No. S—1362, issued on June 29, 1978, in which the Attorney General concluded that the board of trustees of the University of Illinois is a State agency subject to the provisions of the Administrative Procedure Act. (1978 Ill. Att'y Gen. Op. 117.) The opinion stated that in order to qualify as an "agency" an entity must be a " 'State Board' *** authorized by law to make rules or to determine contested cases." The Attorney General found that the board of trustees was sufficiently affiliated with the State to qualify as a "State Board" because: (1) it was created by the General Assembly; (2) the governor serves on the board; (3) nine of the board's members are elected by the voters of the State in general elections; (4) the board has the power to acquire and hold property— but only as trustee and agent for the State, which is the beneficial owner of all the property; (5) the board must pay the income received by the university into a special State treasury fund from which the General Assembly may make appropriations; (6) the board's expenditures are subject to the State Comptroller Act and the Illinois State Auditing Act; (7) the board's employees are employees of the State; and (8) they are subjects of the State University Civil Service System and State Universities Retirement System. In the present case, with the exception of having been created by the General Assembly, the defendant board does not bear any of the other indicia of State affiliation just enumerated.

Plaintiff draws our attention to opinion No. S—1434, issued on April 30, 1979, in which the Attorney General concluded that the Northeastern Illinois Planning Commission (NIPC) is not a State agency within the meaning of the Administrative Procedure Act. (1979 Ill. Att'y Gen. Op. 64.) He opined that although NIPC is "a body politic and corporate," it is "a separate governmental entity exercising a specific and distinct governmental function—planning. It is no part of the counties, cities, villages, townships, park districts, etc., located in the six county area of northeastern Illinois. It is also sepa-

rate and apart from State *government*. State executive government has no control over NIPC, or its functions. Indeed, the Northeastern Illinois Planning Act treats the State of Illinois as a separate entity \*\*\*." (Emphasis in original.) (1979 Ill. Att'y Gen. Op. 64, 65.) Similarly, in the present case, the Board is a body politic and corporate separate from the State in that it exercises a specific and distinct governmental function—to administer and control the Pension Fund for the benefit of public school educators in the City of Chicago. (Ill. Rev. Stat. 1989, ch. 108½, par. 17—101.) It is no part of Cook County, the City of Chicago, or any subdivision of the county or city. (Ill. Rev. Stat. 1989, ch. 108½, par. 22—401.) The State executive department has no control over the Board. (Ill. Rev. Stat. 1989, ch. 108½, par. 17—137.) Moreover, the Pension Code treats the State of Illinois as a separate entity. (See, *e.g.*, Ill. Rev. Stat. 1989, ch. 108½, pars. 17—127, 17—128; see also Ill. Rev. Stat. 1989, ch. 108½, par. 22—401 (a pension fund is a "fund \*\*\* to which the State or any such county, city, town, municipal corporation or body politic and corporate is required to contribute").) Finally, like NIPC, the Board has only regional, rather than statewide, jurisdiction.

All of the foregoing reasons bolster the conclusion that the Board is not a body politic and corporate *of the State*, but is rather separate and apart from State government. Being so separate and apart, the Board similarly cannot be an administrative unit or corporate outgrowth of State government, and therefore fails to satisfy the third and fourth parts of the definition of a State agency. See 1979 Ill. Att'y Gen. Op. 64.

Apart from being an agency of the State, in order to come under the provisions of the Administrative Procedure Act, an agency must also possess the legislative authority to make rules or to determine contested cases. (Ill. Rev. Stat. 1989, ch. 127, par. 1003.01.) We note that section 17—145 of the Pension Code provides that the Board has the duty and authority to adopt rules and bylaws for the administration of the fund. (Ill. Rev. Stat. 1989, ch. 108½, par. 17—145.) However, in light of our determination that the Board is not a body politic and corporate of the State, we need not determine whether it is also a body vested with legislative or adjudicatory powers.

In support of his argument that the Board is a State agency, plaintiff relies on *Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 481 N.E.2d 1004, in which the court held that when the Illinois Attorney General's office acts in its role as administrator of the Crime Victims Compensation Act (Ill. Rev. Stat. 1989, ch. 70, par. 71 *et seq.*), it is an "administrative agency" subject to the attorney fee provisions

of the Administrative Procedure Act. The court relied on *Palmyra Telephone Co. v. Modesto Telephone Co.* (1929), 336 Ill. 158, 163, 167 N.E. 860, 862, in which the supreme court characterized the Illinois Commerce Commission as "an administrative body created by the State for carrying into effect the will of the State as expressed by its legislature." However, this definition of "administrative agency" does not coincide with the definition of the term in section 3.01 of the Administrative Procedure Act, and thus we are not bound to apply it in the present case.

■■ Plaintiff also maintains that the attorney fee provision of the Administrative Procedure Act automatically applies to all entities subject to the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*). Plaintiff's position is incorrect for two reasons. First, the Administrative Procedure Act provides that it shall apply "to every agency as defined herein" (Ill. Rev. Stat. 1989, ch. 127, par. 1002); and, as determined above, the defendant Board is not such an agency. Second, although the Pension Code provides that the Administrative Review Law shall apply to all final administrative decisions of the defendant Board (Ill. Rev. Stat. 1989, ch. 108½, par. 17—158), it does not similarly subscribe to the Administrative Procedure Act. Plaintiff's reliance on *Ackerman v. Department of Public Aid* (1984), 128 Ill. App. 3d 982, 471 N.E.2d 931, which applied the Administrative Procedure Act to the Department of Public Aid in a suit for administrative review, is inappropriate for the same reasons: the department is subject to the Act because it is an agency of the State (see *Ron Smith Trucking, Inc. v. Jackson* (1990), 196 Ill. App. 3d 59, 552 N.E.2d 1271); and the Illinois Public Aid Code expressly adopts the Act's rulemaking provisions (Ill. Rev. Stat. 1989, ch. 23, par. 12—13; *Warrior v. Thompson* (1983), 96 Ill. 2d 1, 14, 449 N.E.2d 53, 59).

■ Finally, plaintiff invites this court to resort to equitable considerations and to award him attorney fees pursuant to section 14.01(b) of the Administrative Procedure Act because the Board's erroneous decision forced him to defend his position in court. However, since the plain meaning of both the Pension Code and the Administrative Procedure Act requires a contrary solution, superimposing any equitable considerations would be unwarranted in this case. (See *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249.) Accordingly, we affirm the decision of the circuit court.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.