SPARKS AND WIEWEL CONSTRUCTION COMPANY *et al.*, Plaintiffs-Appellees, v. GWEN MARTIN, as Director of the Department of Labor, Defendant-Appellant (Dale Conaway, Indiv., Defendant).

Fourth District   Nos. 4—92—0235, 4—92—0236 cons.

Argued May 19, 1993.—Opinion filed September 9, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Thomas R. Dodegge, Deputy Attorney General (argued), of Chicago, of counsel), for appellant.

Stanley E. Niew (argued), of Niew & Associates, P.C., of Hinsdale, and Almon A. Manson, Jr., of Brown, Hay & Stephens, of Springfield, for appellees.

Michael O'Hara, of Cavanagh & O'Hara, of Springfield, for *amicus curiae* Operating Engineers' Local No. 965.

Michael W. Duffe, of Katten, Muchin & Zavis, of Chicago, for *amicus curiae* Associated General Contractors of Illinois.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiffs brought this action in the circuit court of Sangamon County seeking declaratory and injunctive relief against the Director of the Department of Labor (Department) with respect to the Department's interpretation and enforcement of the Prevailing Wage Act (Wage Act) (Ill. Rev. Stat. 1991, ch. 48, par. 39s–1 *et seq.*), *i.e.*, its determination certain employees of Richard Reichert, d/b/a R.W. Reichert Trucking (Reichert), were entitled to prevailing wages under the Wage Act. Both plaintiffs and defendant filed motions for summary judgment. The trial court granted plaintiffs' motion, finding they were exempt from the provisions of the Wage Act and the Department's interpretation to the contrary constituted improper rulemaking. Plaintiffs then filed for attorney fees under section 14.1(b) of the Administrative Procedure Act (Procedure Act) (Ill. Rev. Stat. 1991, ch. 127, par. 1014.1(b)), which the court granted. Defendant appeals, arguing the trial court erred in (1) granting plaintiffs' motion for summary judgment, and (2) finding the Department engaged in improper rulemaking and awarding attorney fees. We affirm in part and reverse in part.

I. BACKGROUND

The facts of the case are not in dispute. The Department of Transportation (DOT) awarded Sparks & Wiewel Construction Company (Sparks), a general contractor engaged in the construction of public works, a contract for the construction of a portion of Route 408 near Quincy, Illinois (the project). The construction work consisted of building an interchange and 2½ miles of four-lane highway. As part of the project, Sparks contracted with Adams Stone and Material, Inc. (Adams), which operates a rock quarry, to supply dirt and stone to the project. Adams, in turn, entered into an oral agreement with Reichert to transport the quarried material to the project.

Reichert employed truck drivers to haul the dirt and rock from the quarry to the project, using trucks owned by him. The truck drivers would drive the trucks to the quarry, where employees of Adams would load the trucks with dirt and rock. The drivers would then drive to the project, approximately six to eight miles away. Once at the project, a "spotter," an employee of Sparks, would direct the driver where to dump the load. Generally, they unloaded the trucks on the project itself in the location where the access and exit ramps were being built. After the trucks were unloaded, Sparks had a bulldozer spread the dirt where it had been unloaded to make the access and exit ramps a certain grade and compaction. It was estimated the bulldozer would spread the dirt anywhere between 15 seconds and 15 minutes after the material was unloaded or as soon as the truck got out of the way. The bulldozer usually was 30 to 40 feet behind the truck while it was dumping. After dumping their loads, the truck drivers would return to the quarry and repeat the process. It took approximately 35 to 40 minutes to complete the process and empty the truck. The drivers were paid $5.50 a load for hauling dirt and a percentage of the volume of material delivered for hauling rock.

Materials were transported to the construction site by means of two different types of trucks, a "belly" dump truck and a straight dump truck with a "pup." A "belly" dump truck has a 25-ton capacity and has gates on the bottom of the truck, which when opened release the material. The truck must continually move to unload, otherwise the material builds up underneath the truck. As it moves, the back axle and tires of the truck pass over the pile of material already released. By using this type of truck, a pile four to eight feet wide, 30 to 40 feet long and two to three feet high results.

A straight dump truck with a "pup" also has a 25-ton capacity but must remain stationary to unload. The pup, which is a trailer pulled behind the dump truck, is unloaded first. It is then "jackknife[d]" to the side or moved at an angle to the pile to unload the main bed of the truck. By using this type of truck, two piles are created with dimensions four to five feet high, tapered out over an area 10 to 12 feet in diameter.

### A. Department Involvement

Based on their activities at the construction site, two of Reichert's truck drivers, George Adduci and Greg Elledge, filed a complaint with the Department alleging truck drivers employed by Reichert were not being paid prevailing wages in accordance with the Wage Act. The Department thereafter commenced an administrative investigation

into the activities of Reichert on the project. As part of the investigation, Dale Conaway, a labor conciliator with the Department, investigated the complaint by visiting the jobsite and observing the unloading of Reichert's trucks. He observed the truckers haul dirt onto the construction site, where they would unload the dirt in front of a bulldozer which would then spread the dirt for the construction of access ramps. Based on his observations, he concluded the work performed by Reichert's truck drivers required the payment of prevailing wages because their work was "an integral part of [the] construction [process]" and they were engaged in actual construction work. By "integral part," he meant "[w]ithout placement of the dirt, the work wouldn't continue; couldn't continue. Had to be done before the rest of the construction could be done."

David Hayes, manager of the conciliation mediation division of the Department, also believed the work was covered under the Wage Act because the material unloaded was incorporated into the construction project by virtue of it being utilized where it was unloaded. He explained in his deposition if material was unloaded on a "neutral area" on the site, where it would be "stockpile[d]," this activity would not be covered under the Wage Act. He defined "stockpiling" as unloading material away from the actual point of construction, with it later being moved to the actual site of construction by another contractor on the site (whose employees were paid the prevailing wage rate). He knew "stockpiling" was not a covered activity based on an Attorney General (AG) opinion dealing with the transportation of material by suppliers and sellers. (See 1964 Ill. Att'y Gen. Op. 86.) In his opinion, any time a supplier otherwise dropped material onto a construction site, the activity would be covered. He further explained it was the Department's position Reichert was engaged in construction because he was dumping material directly onto the roadbed and placing materials on the site of the construction.

## B. *Circuit Court Proceedings*
On January 30, 1991, plaintiffs filed a three-count complaint against the Director of the Department and Conaway. The first count of the complaint sought a declaratory judgment holding the Department's interpretation of "supplier" void, and its action in interpreting the Wage Act in such a manner contrary to the Wage Act and the Procedure Act. They also sought a declaration holding the actions of the Department in issuing oral and informal guidelines concerning the Wage Act and determining Reichert's employees were entitled to prevailing wages were void as without authority of the Wage Act and

such interpretation was issued contrary to the Procedure Act and the Wage Act. Count II sought an injunction against the Department enjoining it from issuing and enforcing an interpretation of the Wage Act requiring suppliers or haulers for suppliers to pay their employees prevailing wages and from issuing and enforcing this rule or interpretation. Count III was directed solely at Conaway and was later voluntarily dismissed.

While Conaway had determined the activities of Reichert's truck drivers were covered under the Wage Act, at the time the suit was filed the Department had not completed an audit of Reichert's records to ascertain compliance with the Wage Act, calculated his liability, commenced any administrative or judicial action, or issued a notice of violation of the Wage Act or a stop-work order. The Department had issued a subpoena, requesting Reichert to provide various documents, including payroll records, with which he partially complied. Because the Department had commenced an investigation regarding his activities on the project, Reichert voluntarily "shut down" on November 13, 1990. At some point after the first of the year, Reichert commenced hauling again.

Both sides thereafter filed cross-motions for summary judgment. In support of plaintiffs' motion, they filed an affidavit from Richard Klusmeyer, county superintendent of highways of Adams County, Illinois, in which he stated in his 20 years of employment with Adams County, "a trucker such as Reichert [did] not pay prevailing wage to its truck drivers when delivering material for a material supplier such as Adam's [*sic*]. To the best of my knowledge this [was] also the practice throughout the [S]tate."

After a hearing on the motions, the trial court by memorandum opinion found the AG's interpretation of the Wage Act inconsistent with the statutory language and its interpretation, as well as the Department's decision, ignored the plain language of the Wage Act and failed to recognize the exception in the statute for sellers or suppliers engaged in transportation. It also found the Department's interpretation constituted a definition of a supplier which was contrary to law and without authority. It further determined Adams and Reichert were sellers or suppliers transporting materials within the Wage Act's exemption, and while Reichert's acts were "admittedly intertwine[d] with the actual construction process," the exemption in the statute for sellers and suppliers did not limit the acts of those sellers or suppliers as interpreted by the Department or the AG.

On February 14, 1992, the trial court filed its order, granting plaintiffs' motion for summary judgment. It concluded plaintiffs were

either sellers or suppliers under the Wage Act and were thereby exempt from paying prevailing wages at the project. It also maintained the Department's interpretation, *i.e.*, (1) the delivery of material to a construction site by Reichert was not exempted from the provisions of the Wage Act, and (2) an exemption under the Wage Act existed only as long as there was "stockpiling" at a "neutral site" and no spreading of material, was void and contrary to law. The issuance and enforcement of such an interpretation was found to be unauthorized by statute and to constitute improper legislation or rulemaking. The court further enjoined defendant from enforcing such an interpretation. The AG's opinion was similarly found to be inconsistent with the statutory language of the Act.

Following the trial court's ruling, plaintiffs petitioned for attorney fees pursuant to section 14.1(b) of the Procedure Act (Ill. Rev. Stat. 1991, ch. 127, par. 1014.1(b)), alleging the Department failed to follow statutory guidelines in the adoption of a rule and exceeded its statutory authority. On August 4, 1992, the trial court granted the petition for attorney fees, and these appeals followed.

II. APPLICABILITY OF THE WAGE ACT TO SUPPLIER'S TRUCK DRIVERS

We first address whether plaintiffs were exempt from the provisions of the Wage Act.

Summary judgment is properly granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); see also *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) Because it is a drastic means of disposing of litigation, summary judgment should only be granted "when the right of the moving party is clear and free from doubt." (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) In evaluating the propriety of the trial court's entry of summary judgment, the proper standard of review is *de novo*. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209.

The first Prevailing Wage Act was enacted in 1931 (Ill. Rev. Stat. 1931, ch. 48, par. 39a *et seq.*) and was declared unconstitutional the same year. (See *Mayhew v. Nelson* (1931), 346 Ill. 381, 178 N.E. 921.) In 1939, a second Prevailing Wage Act was passed (Ill. Rev. Stat. 1939, ch. 48, par. 39n *et seq.*), and in 1940 it was declared unconstitutional. (*Reid v. Smith* (1940), 375 Ill. 147, 30 N.E.2d 908.) In 1941,

the current Wage Act was enacted and it has withstood constitutional challenges. See *Hayen v. County of Ogle* (1984), 101 Ill. 2d 413, 463 N.E.2d 124; *People ex rel. Bernardi v. Roofing Systems, Inc.* (1984), 101 Ill. 2d 424, 463 N.E.2d 123; *City of Monmouth v. Lorenz* (1963), 30 Ill. 2d 60, 66-67, 195 N.E.2d 661, 664-65 (finding the 1957 and 1961 amendments unconstitutional, but determining this did not render Wage Act unconstitutional in total); *Bradley v. Casey* (1953), 415 Ill. 576, 585, 114 N.E.2d 681, 685 (upholding constitutionality of Wage Act with the exception of one provision not germane to the issue presented herein); *Anderson v. County of Jo Daviess* (1980), 81 Ill. App. 3d 354, 401 N.E.2d 265; *Gray v. Department of Labor* (1988), 176 Ill. App. 3d 285, 531 N.E.2d 32.

The declaration of the policy of the State is set forth in section 1 of the Wage Act, wherein it is declared: "a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works." (Ill. Rev. Stat. 1991, ch. 48, par. 39s—1.) The purpose of the Wage Act is to ensure people working on public works projects receive a decent wage. (*Hayen*, 101 Ill. 2d at 421, 463 N.E.2d at 128; *People ex rel. Bernardi v. Illini Community Hospital* (1987), 163 Ill. App. 3d 987, 990, 516 N.E.2d 1320, 1321; see also *Monmouth*, 30 Ill. 2d at 62, 195 N.E.2d at 662.) This, in turn, secures for the State the advantage of " 'having the work performed under conditions which give some assurance that the work will be completed without interruptions or delay by workmen of average skill.' " (*Bradley*, 415 Ill. at 586, 114 N.E.2d at 686, quoting *Long Island R.R. Co. v. Department of Labor* (1931), 256 N.Y. 498, 513, 177 N.E. 17, 22; see also *Hayen*, 101 Ill. 2d at 421, 463 N.E.2d at 128.) The Wage Act also serves to protect local workers by removing the incentive to import less expensive labor from areas outside the locality in which the work is being performed. *People ex rel. Bernardi v. City of Highland Park* (1988), 121 Ill. 2d 1, 10, 520 N.E.2d 316, 320.

### A. *Statutory Language and Illinois Authority on Point*

This appeal focuses on the meaning to be given section 3 of the Wage Act, which specifies those entitled to receive prevailing wages:

"Not less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed, and not less than the general prevailing rate of hourly wages for legal holiday and overtime

work, shall be paid to all laborers, workers and mechanics employed by or on behalf of any public body engaged in the construction of public works. *Only such laborers, workers and mechanics as are directly employed by contractors or subcontractors in actual construction work on the site of the building or construction job, and laborers, workers and mechanics engaged in the transportation of materials and equipment to or from the site, but not including the transportation by the sellers and suppliers or the manufacture or processing of materials or equipment,* in the execution of any contract or contracts for public works with any public body *shall be deemed to be employed upon public works."* (Emphasis added.) Ill. Rev. Stat. 1991, ch. 48, par. 39s—3.

On appeal, defendant and her *amicus curiae,* Operating Engineers Local No. 965, contend the court's interpretation of the Wage Act erroneously provides a blanket exemption for all acts of sellers and suppliers no matter what the activity. They acknowledge sellers and suppliers engaged in transportation are exempt from the Wage Act, but argue the exemption was not intended to encompass actual construction work on the site. They advocate using a "functional test" to ascertain whether plaintiffs were covered under the Wage Act, *i.e.,* whether their work was functionally related to construction work. If the sellers or suppliers engage in more than mere transportation, they allege their activities would be covered by the Wage Act. Since the truck drivers in the instant case "unloaded their trucks directly onto the portion of the site where the material was to be incorporated into the project, sometimes spreading the dirt," and bulldozers compacted the dirt behind them, thereby incorporating their load into the project, they maintain plaintiffs did more than merely transport materials and instead were engaged in the construction process so as to fall within the purview of the Wage Act. Defendant acknowledges, however, if the supplier was transporting material to be "stockpile[d]" at a "neutral area" on the site, then the supplier would not be covered. Since the trial court acknowledged Reichert's activities "admittedly intertwine[d] with the actual construction process," they maintain the truck drivers were entitled to protection under the Wage Act.

Conversely, plaintiffs and *amicus curiae* (Associated General Contractors of Illinois) argue under the plain meaning of the Wage Act employees of sellers and suppliers involved in transportation of materials are not covered by the Wage Act, and Reichert's truck drivers did not perform any jobsite work or construction work. They contend

any spreading the workers did was *incidental to the delivery* of the material. Since the truck drivers only delivered materials, under the plain language of the statute, transporters such as Reichert are exempted from the Wage Act.

Our research has not disclosed any case law specifically interpreting section 3 of the Wage Act. In *Gray v. Department of Labor* (1988), 176 Ill. App. 3d 285, 531 N.E.2d 32, however, the appellate court recognized the Wage Act's dichotomous treatment of employees of contractors and suppliers. In doing so, the court rejected plaintiff's argument the Wage Act distinguished between employees who transport material to construction sites based upon who they are employed by in violation of the equal protection clause of the United States Constitution. As authority for this holding the court cited *Hayen*, wherein the supreme court found the Wage Act bore a rational relationship to a legitimate State interest. In addressing the equal protection argument, the court also noted contractors and suppliers have different employees. *Gray*, 176 Ill. App. 3d at 290, 531 N.E.2d at 34.

While there is no case law interpreting section 3 of the Wage Act, the AG, in response to questions by the Department of Labor, has addressed the applicability of this section to certain employees engaged in the transportation of material to and from a building or construction site. (1964 Ill. Att'y Gen. Op. 86.) In this opinion, the AG stated section 3 of the Wage Act required employees engaged in actual construction work on the jobsite and employees of contractors or subcontractors engaged in transporting materials to and from the site to receive prevailing wages. By contrast, it stated employees of sellers and suppliers who transport materials to jobsites or employees of sellers or suppliers engaged in the manufacturing or processing of materials to be transported to the jobsite were expressly excluded from the coverage of the Wage Act. (1964 Ill. Att'y Gen. Op. at 87.) The opinion also analyzed the application of the Wage Act to the following situations:

" '1. A supplier of materials transports with his own equipment materials to a job site [*sic*] where he dumps and stockpiles them [not covered].

2. A supplier of materials transports with his own equipment materials to a job site [*sic*] where he enters onto the job site [*sic*] and spreads the materials as a part of the construction job [covered].

3. A supplier of materials hires an outside trucking firm to transport materials to a job site [*sic*] where they may be either,

a) stockpiled [not covered], or b) spread as a part of the construction [covered].

4. A purchaser of materials transports the materials from the production site to the construction site [covered].

5. A purchaser of materials transports materials to the job site [sic] and spreads the materials [covered].

6. A purchaser, transporter, or seller of materials subcontracts the hauling of materials to a job site [sic] where they are either, a) stockpiled [not covered], or b) spread into the construction [covered].' " (1964 Ill. Att'y Gen. Op. at 87.)

With regard to these specific instances, the AG found:

"[Q]uestions 2, 3[(b)], 5 and 6 involve the spreading of the transported material at the job site [sic] by workmen engaged in the transportation of such material. Whenever this occurs on any public construction work, it would clearly seem to be the performance of a part of such construction and employees so engaged in spreading the material would come within the statutory definition of laborers, workmen and mechanics deemed to be employed on public works. Such employees, therefore, should be paid the prevailing rate of wages.

Questions 1, 3[(a)] and 6, on the other hand, involve the transportation of materials to the job site [sic] where it is only stockpiled as contrasted with spreading the material at the job site [sic]. In such circumstances where there is only stockpiling of the material by the employees engaged in transportation, said employees are not covered by the Prevailing Wage Act.

Question 4 poses the problem of the purchaser of materials transporting the materials from the production site to the construction site. A purchaser must necessarily be either a contractor, subcontractor, or the public body performing the construction work. In this situation the laborers, workmen or mechanics of such a purchaser transporting materials to the job site [sic] would come within the operation of the [Wage] Act and should be paid the prevailing rate of wages, regardless of whether stockpiling or spreading the material by the employees might be involved.

In specific answer to your questions, therefore, it is my opinion that the Prevailing Wage Law does not apply to the factual situation stated in question No. 1. Nor does it cover situations in 3[(a)] and 6 where there is only stockpiling of material at the job site [sic]. The Prevailing Wage Law, however, does cover and apply to the alternative situations in questions

2, 3[(b)], 5 and 6 where there is spreading of the material as part of the construction on the job site [sic]." 1964 Ill. Att'y Gen. Op. at 88.

Conaway relied on the AG's opinion in determining Reichert's truck drivers were to be paid prevailing wages. Similarly, defendant cites the opinion as authority for reversing the trial court's determination. The trial court, however, found the AG's interpretation inconsistent with the statutory language and contrary to law. It concluded the opinion ignored the plain language of the statute which clearly exempts the transportation by sellers or suppliers from its application. Since Adams and Reichert were sellers or suppliers, they were exempt from the Wage Act for any acts of transportation, and the trial court asserted the AG's opinion and the Department's interpretation in no way recognized this exemption.

Although not binding on this court, a well-reasoned opinion of the AG is persuasive authority (*Guse v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund* (1990), 203 Ill. App. 3d 111, 118, 560 N.E.2d 1048, 1051) and entitled to considerable weight in resolving a question of first impression in this State regarding the construction of an Illinois statute. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 130-31, 384 N.E.2d 310, 316; *Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 317, 527 N.E.2d 1264, 1271.) AG opinions, however, do not have the force and effect of law. *Kendzior v. Kusper* (1983), 118 Ill. App. 3d 83, 86, 454 N.E.2d 1070, 1073.

■ We agree the AG's opinion is inconsistent with the statutory language of section 3 of the Wage Act. Under the plain language of the statute, only those *employed by contractors or subcontractors* in construction work and transportation of materials to or from the project site must be paid prevailing wages. Those engaged in transportation *by sellers and suppliers of materials* are expressly excluded from the coverage of the Wage Act. Clearly the truck drivers in the present case engaged in transportation for Adams and Reichert, who were sellers or suppliers, not contractors or subcontractors. Neither is there any question on the location where Reichert's truck drivers dumped the rock and dirt. Reichert's trucks were driven onto the construction site and unloaded at the exact location where the material would be used. It is undisputed Reichert's truck drivers did not "stockpile" the material. The question then is whether, by virtue of dumping material onto the roadbed and "spreading" it while unloading, the truckers were engaged in construction work so as to fall within the purview of the Wage Act.

■■ The statute is unambiguous and clear in answering this question. Those employed by sellers or suppliers engaged in the transportation of materials are excluded from coverage. The truck drivers fell specifically within the exemption. The fact they dumped the material where it would be used is not dispositive. They did not perform actual construction work on the site of the construction project. Rather, any "spreading" done by them was a result of the unloading process and was the final act of unloading; they did not get out of their trucks and spread the material; all handling of the material was done by other workers on the project. The statutory language is clear and will be given effect. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475-76, 433 N.E.2d 674, 677; *People v. Goins* (1988), 119 Ill. 2d 259, 265, 518 N.E.2d 1014, 1016.) The trial court correctly found plaintiffs were excluded from the coverage of the Wage Act.

### B. *Authority from Other Jurisdictions*

Further, we find the foreign case law and Federal and State statutes cited by the parties unpersuasive. In support of her argument, defendant cites three cases from other States, each interpreting that State's prevailing wage statute. (See *Green v. Jones* (1964), 23 Wis. 2d 551, 128 N.W.2d 1; *Construction Industries v. Commissioner of Labor & Industries* (1989), 406 Mass. 162, 546 N.E.2d 367; *O.G. Sansone Co. v. Department of Transportation* (1976), 55 Cal. App. 3d 434, 127 Cal. Rptr. 799.) Plaintiffs distinguish these cases but contend case law construing the Davis-Bacon Act, the Federal prevailing wage law (40 U.S.C. §276a *et seq.* (1988)), should be considered as instructional. They further cite case law defining jobsite work under the National Labor Relations Act (NLRA) (29 U.S.C. §151 *et seq.* (1988)) (see *H.B. Zachry Co. v. United States* (Ct. Cl. 1965), 344 F.2d 352; *Building & Construction Trades Department v. United States Department of Labor Wage Appeals Board* (D.C. Cir. 1991), 932 F.2d 985), and construing the phrase "at the site of the construction" in the context of determining whether certain restrictive subcontracting provisions of union contracts ("hot cargo" clauses) were valid under section 158(e) of the NLRA (29 U.S.C. §158(e) (1988)). As the parties point out, the language of the various Federal and State statutes is strikingly different from and broader than that of the Illinois wage law, and case law interpreting these statutes is therefore of little value in interpreting the coverage of the Illinois wage law. Illinois wage law is specific, only *employees of contractors or subcontractors* are covered by the Wage Act. Suppliers or sellers engaged in the transportation of materials are excluded.

### III. WHETHER THE DEPARTMENT ENGAGED IN IMPROPER RULEMAKING TO JUSTIFY ATTORNEY FEE AWARD

■ The Department next argues the trial court erred in determining its interpretation of the Wage Act was contrary to law and constituted improper legislation or rulemaking and in granting attorney fees. Section 14.1(b) of the Procedure Act authorizes the award of attorney fees in any case in which a party has an administrative rule invalidated by a court for any reason, including when an agency exceeds its statutory authority or fails to follow the statutory procedures in the adoption of a rule. (Ill. Rev. Stat. 1991, ch. 127, par. 1014.1(b).) Ostensibly, the trial court reasoned the Department engaged in rulemaking because it had incorrectly interpreted the Wage Act's coverage to include material deliverymen.

To support her challenge to the trial court's ruling, defendant argues the Department did not engage in rulemaking, but made case-by-case determinations based on application and interpretation of the Wage Act to the particular set of facts. As to the award of attorney fees, defendant contends the order must be reversed as premised upon the erroneous finding the Department engaged in rulemaking. Defendant further argues the case against Reichert was still in the investigatory stage when the complaint was filed and had not reached an adjudicatory stage.

Conversely, plaintiffs alleged the Department developed internal rules to determine when a person violated the wage law. These unwritten interpretations were not adopted in accordance with the Procedure Act and were therefore improper.

Section 3.09 of the Procedure Act defines "rule" as:

"[E]ach agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (a) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency, (b) informal advisory rulings issued pursuant to Section 9, (c) intra-agency memoranda or (d) the prescription of standardized forms." (Ill. Rev. Stat. 1991, ch. 127, par. 1003.09.)

In adopting rules, administrative agencies must comply with the public notice and comment requirements set out in section 5.01 of the Procedure Act (Ill. Rev. Stat. 1991, ch. 127, par. 1005.01). Unless a rule is promulgated in conformity with these requirements and is filed with the Secretary of State, it is not valid or effective against any person or party and may not be invoked by an administrative agency for any purpose. (Ill. Rev. Stat. 1991, ch. 127, pars. 1004(c), 1005.01.) It is undisputed the Department did not comply with any of these procedures in determining a

supplier's truck drivers who unload material on a construction site are covered under the Wage Act. However, not all statements of agency policy must be announced by means of published rules. When an administrative agency interprets statutory language as it applies to a particular set of facts, adjudicated cases are a proper alternative method of announcing agency policies. *N L R B v. Wyman-Gordon Co.* (1969), 394 U.S. 759, 22 L. Ed. 2d 709, 89 S. Ct. 1426; *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board* (1988), 173 Ill. App. 3d 395, 412, 527 N.E.2d 538, 549; *Kaufman Grain Co. v. Director of the Department of Agriculture* (1988), 179 Ill. App. 3d 1040, 1047, 534 N.E.2d 1259, 1264.

Based on the facts of this case, we find the Department did not engage in rulemaking but merely interpreted the statutory language of the Wage Act and applied it to a particular set of facts. In interpreting the statute, it looked to the AG's opinion as authoritative precedent. Both Conaway and Hayes stated in their depositions the Department had not adopted a policy regarding including material deliverymen in the coverage of the Wage Act, but merely applied the Wage Act to the facts. Section 6 of the Wage Act mandates the Department to "inquire diligently as to any violation of this Act, \*\*\* institute actions for penalties \*\*\*, and \*\*\* enforce generally the provisions of this Act." (Ill. Rev. Stat. 1991, ch. 48, par. 39s—6.) A legislative grant of power to an administrative agency includes the power to do all that is reasonably necessary to exercise the power granted. (*Prairie State*, 173 Ill. App. 3d at 411, 527 N.E.2d at 549.) This legislative grant of power would necessarily confer on the Department the power to interpret the Wage Act to determine who is covered. The fact it construed the statute more broadly than the language allows does not indicate it engaged in rulemaking or exceeded its statutory grant of power. Were we to adopt defendant's argument, the Department would be required to go through the procedures for adopting rules each time it resolved a case of first impression.

## IV. CONCLUSION

For the above reasons, the trial court's order finding plaintiffs exempt from the provisions of the Wage Act is affirmed, and its order determining the Department engaged in improper rulemaking is reversed, as is the award of attorney fees.

Affirmed in part; reversed in part.

STEIGMANN, P.J., and McCULLOUGH, J., concur.