THE COUNTY OF STARK, Plaintiff-Appellant, v. THE COUNTY OF HENRY, Defendant-Appellee.

Third District  No. 3—97—0507

Opinion filed April 8, 1998.

HOMER, J., specially concurring.

James D. Owens, State's Attorney, of Toulon, for appellant.

Ted J. Hamer, State's Attorney, of Cambridge (Terence M. Patton, Assistant State's Attorney, of counsel), for appellee.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

The County of Stark (Stark County) appeals from a judgment in favor of the County of Henry (Henry County). The trial court entered judgment after a jury found that Henry County was not required to pay for a portion of the costs of rebuilding a bridge located in Stark County. On appeal, Stark County argues that Henry County should have been required to pay pursuant to section 5—503 of the Illinois Highway Code (605 ILCS 5/5—503 (West 1994)) because the bridge was located on a county line highway.

We hold that Stark County was required to prove that the road in question was located within 80 rods of the county line in *both* Stark County and Henry County in order to prove that the bridge was located on a county line highway pursuant to section 5—503. Following our careful review of the record, we conclude that Stark County failed to prove that the road located in Henry County was within 80 rods of the county line. Accordingly, we affirm.

## FACTS

The bridge at issue is known as the Harold Dustin Bridge. It is located in Stark County on a road that begins at Route 78 in Stark County, crosses the county line into Henry County, and traverses the southeast corner of Henry County until it reenters Stark County before it ends at Route 91. Based upon the record and the way this case has been presented for review, we conclude that it is not necessary to discuss that portion of the road that leaves Henry County and then returns back into Stark County before it ultimately ends at Route 91.

In 1990, the Harold Dustin Bridge was placed on a priority list of bridges in need of repair in Stark County. On July 9, 1990, George Meister, highway engineer for both Stark County and Marshall County, entered into an agreement with Hanson Engineering to prepare plans for rebuilding the Harold Dustin Bridge. Hanson completed the engineering plans in 1992 or 1993. Money for the bridge was included in Stark County's appropriation budget for 1994. The county was planning on using township bridge program money from the state to pay for the construction expense. At that time, Meister did not believe that the Harold Dustin Bridge was located on a county line highway. As a result, Meister did not expect Henry County to contribute to the cost of rebuilding the bridge.

In April 1994, Meister was contacted by Woodford County regarding a different bridge project. Meister was informed by Woodford County that Marshall County was required to contribute a portion of

the cost for a bridge project in Woodford County. Marshall County agreed to contribute to the Woodford County project. Meister believed that the situation in the case at hand was similar to the Woodford County bridge project. Consequently, Meister concluded that Henry County should contribute to the rebuilding of the Harold Dustin Bridge.

On June 30, 1994, Meister called Steven Brandau, Henry County's highway engineer. Meister said that he thought the Harold Dustin Bridge was located on a county line highway and that Henry County should contribute to the cost of rebuilding the bridge. Brandau responded by telling Meister that he did not think the bridge was located on a county line highway and therefore no reimbursement would be forthcoming from Henry County. However, Meister and Brandau did agree to seek an opinion on the matter from the office of the Illinois Attorney General. Thereafter, the State's Attorneys of both counties requested an opinion from the Attorney General.

On July 28, 1994, Stark County opened the bids for the rebuilding of the Harold Dustin Bridge. The contractor was selected, and a contract was subsequently signed. Construction on the bridge began near the end of August 1994.

On April 11, 1995, Meister sent a formal written notice to Brandau and the chairman of the Henry County Board requesting that Henry County contribute to the cost of rebuilding the Harold Dustin Bridge. The Henry County board denied the request. The bridge was completed in June 1995 at a total cost of $191,857.52.

On January 31, 1996, the Illinois Attorney General issued a formal opinion regarding the bridge project. 1996 Ill. Att'y Gen. Op. No. 96—007. The Attorney General stated that he had been asked regarding the applicability of section 5—503 of the Illinois Highway Code (605 ILCS 5/5—503 (West 1994)) to the construction of the Harold Dustin Bridge. Section 5—503 states the circumstances under which adjoining counties must share the cost of constructing and repairing bridges.

The Attorney General stated that, in his opinion, section 5—503 "applies only to bridges or related structures on roads that are on county lines or on highways which can properly be denominated 'county line highways' and which deviate not more than 80 [rods] from the established county line." 1996 Ill. Att'y Gen. Op. No. 96—007, slip op. at 5. In the Attorney General's opinion, a road was considered a "county line highway" pursuant to section 5—503 when the road was lying on or closely paralleling a county line. The Attorney General stated that the statute referred "to bridges on highways which deviate not more than 80 rods from a county line,

not to bridges on highways some parts of which lie within 80 rods of a county line." 1996 Ill. Att'y Gen. Op. No. 96—007, slip op. at 6-7. The Attorney General concluded that, based on the facts submitted by Henry County, the road in question would probably not be considered a county line highway under section 5—503.

On September 12, 1996, Stark County filed its complaint against Henry County seeking 81.8% of the cost of the bridge which totalled $191,857.52. A jury trial was held on June 11, 1997.

Meister testified at trial that there was no portion of the road in question which was more than 80 rods from the Stark County line. A survey was admitted into evidence which showed that the entire portion of the road in Stark County extending from Route 78 to the Henry County line was located within 80 rods of the county line. Moreover, the survey showed that the Harold Dustin Bridge was located on this portion of the Stark County road.

During cross-examination, Meister clarified that he was *only* testifying about the portion of the road located in Stark County. Meister noted that, based upon Illinois Department of Transportation (IDOT) record keeping, the road ended and was given a different name when it crossed into Henry County. No survey was introduced into evidence for that portion of the road located in Henry County. When cross-examined about a large Henry County exhibit described as a "layout map," Meister testified that he did not know whether the portion of the road in Henry County was located within 80 rods of the county line.

During closing argument, Henry County claimed the road was not a county line highway. Henry County argued that a review of the Henry County exhibit would clearly reveal that the portion of the road located in Henry County was more than 80 rods from the county line. Henry County contended that it was not enough under the statute for Stark County to prove that the bridge was less than 80 rods from the county line in Stark County. Instead, Henry County argued that the statute required Stark County to prove that the road was located within 80 rods of the county line in *both counties*.

The jury left the courtroom to deliberate at 3:45 p.m. on June 11, 1997, and returned 30 minutes later with a verdict in favor of Henry County. Stark County's timely appeal followed.

## ANALYSIS

### I. STANDARD OF REVIEW

■ It is well established that, in an appeal from a jury verdict, a reviewing court may reverse the jury's decision *only* if it is against the manifest weight of the evidence. *Rhodes v. Illinois Central Gulf*

*R.R.*, 172 Ill. 2d 213, 242, 665 N.E.2d 1260, 1274 (1996). A judgment is against the manifest weight of the evidence when an opposite conclusion is apparent or when the jury's findings are unreasonable, arbitrary or not based upon the evidence. *Rhodes*, 172 Ill. 2d at 242, 665 N.E.2d at 1274.

## II. COUNTY LINE HIGHWAY

Stark County claims that the portion of the road including the Harold Dustin Bridge lies entirely within 80 rods of the Stark County line "and is therefore a county line highway." We disagree with Stark County's conclusion based upon the law and the evidence presented in this case.

■ Section 5—503 of the Illinois Highway Code states, in pertinent part:

> "Bridges, culverts or drainage structures for across highway waterways having a waterway opening of 25 square feet or more and located on county highways, township roads or district roads on county lines, and bridges, culverts or drainage structures for across highway waterways having a waterway opening of 25 square feet or more and located *on such county line highways where such highways deviate from the established county line within 80 rods of county lines*, shall be constructed and repaired by such counties and the expense of such construction and repair shall be borne in a proportion to the assessed value of the taxable property in the respective counties according to the last preceding equalized assessment thereof prior to such construction or repair." (Emphasis added.) 605 ILCS 5/5—503 (West 1994).

Interestingly, the only reported case construing the statute in question involved the same bridge in Stark County. *County of Stark v. County of Henry*, 326 Ill. 535, 158 N.E. 116 (1927). In that case, the court determined that Henry County was required to reimburse Stark County for a portion of the cost of constructing the bridge in Stark County. However, the statute in effect in 1927 required contribution from the adjoining county *when the bridge in question* was located on a road within 80 rods of the county line. Ill. Rev. Stat. 1927, ch. 121, par. 41; *County of Stark*, 326 Ill. at 537, 158 N.E. at 117. The court determined that the statute in effect at that time applied because the *bridge* was located within 80 rods of the county line. *County of Stark*, 326 Ill. at 539, 158 N.E. at 118.

The language of the statute in question was changed by the Illinois General Assembly following the supreme court's decision in *County of Stark*. We note that the parties have not cited to this court, nor have we found, any case construing the language of the amended statute quoted above.

The Attorney General in his opinion determined that the language of the current statute "now applies only to bridges or related structures on roads that are on county lines or on highways which can properly be denominated 'county line highways' and which deviate not more than 80 [rods] from the established county line." 1996 Ill. Att'y Gen. Op. No. 96—007, slip op. at 5. The Attorney General noted that the statute does not specifically define a "county line highway." However, he noted that the language of section 5—503:

> "clearly contemplates a road lying on, or closely paralleling, a county line. Thus, it refers to bridges on highways which deviate not more than 80 rods from a county line, *not to bridges on highways some parts of which lie within 80 rods of a county line.*" (Emphasis added.) 1996 Ill. Att'y Gen. Op. No. 96—007, slip op. at 6-7.

The Attorney General then concluded in his opinion:

> "As to whether the road in question is a county line highway, assertions by the Henry County [e]ngineer *** suggest that it is not. The road evidently crosses the extreme southeast corner of Henry County, but originates and ends in Stark [C]ounty, portions of which lie both south and east of Henry County. No information has been provided regarding the extent to which the road may parallel the county line to the west of the bridge in question, or the distance it may deviate therefrom at any other point. *** [This] must be considered in determining whether the road is a county line highway to which section 5—503 is applicable." 1996 Ill. Att'y Gen. Op. No. 96—007, slip op. at 7.

■ From our review of the Attorney General's opinion, we find a careful consideration of the legislative amendments to the statute in question. We also find sound reasoning in the Attorney General's interpretation of the present statute. We are mindful that an Attorney General's opinion is *not* binding on a reviewing court in this state. *Mulligan v. Joliet Regional Port District*, 123 Ill. 2d 303, 317-18, 527 N.E.2d 1264, 1271 (1988). However, a well-reasoned opinion of the Attorney General is persuasive authority and entitled to considerable weight on review in resolving a question of first impression regarding the construction of an Illinois statute. *Sparks & Wiewel Construction Co. v. Martin*, 250 Ill. App. 3d 955, 965, 620 N.E.2d 533, 541 (1993); see also *Mulligan*, 123 Ill. 2d at 317-18, 527 N.E.2d at 1271.

■ We agree with the Attorney General's analysis of section 5—503 that the statute requires adjoining county contribution when the bridge is located on a county line highway. Moreover, we also agree with the Attorney General that a road is a *county line highway* under the statute *when the entire road* is on or parallel to the county line and deviates no more than 80 rods from the county line.

As a result, we disagree with Stark County's analysis of section 5—503. Stark County essentially claims that a bridge is on a county line highway when the bridge is located within 80 rods of the county line. If we were to accept Stark County's analysis, we would reach the same conclusion that the court did in 1927. See *County of Stark*, 326 Ill. at 537-39, 158 N.E. at 117-18. However, as we have previously noted, the language of section 5—503 *has been* changed by the General Assembly over the years following the supreme court's decision in 1927. A reviewing court must presume that the General Assembly intended some change in the law when it amends a statute. *In re Petition of the Board of Trustees of the Mokena Community Public Library District*, 287 Ill. App. 3d 1064, 1067, 680 N.E.2d 743, 746 (1997).

From our review of section 5—503, we conclude that Stark County was required to prove that the *entire road* in question was located within 80 rods of the county line in *both* Stark County and Henry County in order to prove that it was a county line highway. The record shows that Stark County only proved that the road in Stark County was located within 80 rods of the county line. It is undisputed that Stark County failed to present any evidence regarding the location of the road in Henry County. As a result, Stark County failed to prove that the road was a county line highway as required by the statute. Consequently, we find that Stark County failed to meet the requirements of section 5—503 as it applies to the Harold Dustin Bridge. For these reasons, we find the jury's verdict was not against the manifest weight of the evidence.

## III. CONCLUSION

In sum, we have concluded that Stark County failed to prove that the Harold Dustin Bridge was located on a county line highway. Because of our determination, it is not necessary for us to review the additional issues raised in this appeal.

For the reasons stated, the judgment of the circuit court of Henry County is affirmed.

Affirmed.

LYTTON, J., concurs.

JUSTICE HOMER, specially concurring:

I agree that Stark County failed to prove that the Harold Dustin Bridge project qualifies for the mandatory cost-sharing provisions of section 5—503 Illinois Highway Code (605 ILCS 5/5—503 (West

1994)). However, I believe that the majority opinion establishes a faulty definition of "county line highway," which may create controversy in some adjoining counties where none now exists.

The majority attempts to extrapolate a definition of "county line highway" from section 5—503. I believe this is the wrong approach since the section was never intended to define "county line highway" but to describe which structures qualify for mandatory cost sharing.

Under section 5—503, the structures that qualify are located on county highways, township roads or district roads on county lines, and structures on such county line highways where such highways deviate within 80 rods of the established county line. A plain reading of the statute reveals the phrase "such county line highways," as used here, refers to "county highways, township roads or district roads on county lines." This language does not work in reverse to establish a definition of "county line highway." It seems more likely that the General Assembly found it unnecessary to define "county line highway" because those roads that were county line highways were well known and designated as such.

What the opinion seems to rely on to come to its conclusion is that Stark County failed to prove the portion of the road in Henry County was within 80 rods of the county line. Such a technical approach is faulty. The definition established in the opinion may result in some structures physically located on county lines being excluded from mandatory cost sharing. Such would be the case with a road that tracks a county line for a short distance before vectoring off in another direction. Even if the structure lay squarely on the county line in such instance, the majority opinion would exempt it from mandatory cost sharing, merely because the road upon which it is located eventually deviates more than 80 rods from the county line and therefore cannot be considered a "county line highway." Conversely, a neighboring county could be compelled to share the cost of a structure located on a road that never connects with the county line and that the counties never before contemplated constituted a county line highway. This would be true even if no remarkable terrain characteristics would have made construction of a road on the county line difficult or impossible. I do not believe the legislature ever intended such anomalous results.

The subject bridge does not qualify for mandatory cost sharing under section 5—503 because it is not a structure located on a highway or road *on* a county line. While it is not necessary for the structure, itself, to lie on the county line, I believe the plain language of the statute should be reasonably construed to require at least portions of the road on both ends of the structure on which the road is

located to lie on the county line. Further, such segment of road containing the structure must deviate no more than 80 rods from the county line in order to invoke mandatory cost sharing. The evidence established that although the road in question crossed the Stark-Henry County lines in two locations, it was not a road on a county line within the contemplation of section 5—503. Permissive cost sharing for structures that cross county lines is prescribed in section 5—502.

While I agree with the result reached by the majority in this case, I disagree with its rationale.